# EXHIBIT H



**US Army Corps
of Engineers**
Seattle District

# Special Public Notice

**Regulatory Branch
4735 East Marginal Way South, Building 1202
Seattle, Washington  98134**                    **Public Notice Date:  April 4, 2025**

**TO WHOM IT MAY CONCERN:** The purpose of this notice is to advise the public that the U.S. Army Corps of Engineers (USACE), Northwestern Division has approved the use of special emergency processing procedures by Seattle District in accordance with 33 CFR § 325.2(e)(4) for activities covered by the National Energy Emergency declared in Executive Order (EO) 14156. EO 14156 was issued on January 20, 2025, under the President's legal authorities, including the National Emergencies Act (50 U.S.C. §§ 1601 et seq.) and 3 USC § 301. For the reasons stated in Section 1 of EO 14156, the President has found that insufficient energy production, transportation, refining, and generation constitutes an unusual and extraordinary threat to our Nation's economy, national security, and foreign policy and declared a national emergency on the basis of those findings. The President has directed agencies to use, to the fullest extent possible and consistent with applicable law, emergency USACE permitting provisions to facilitate the Nation's energy supply.

These special emergency processing procedures have been approved for activities associated with the identification, siting, production, transportation, refining, and generation of domestic energy sources, including energy infrastructure, that require Department of the Army authorization under Section 10 of the Rivers and Harbors Act of 1899, Section 404 of the Clean Water Act, and/or Section 103 of the Marine Research, Protection, and Sanctuaries Act of 1972, as amended, where there would be an unacceptable hazard to life, a significant loss of property, or an immediate, unforeseen, and significant economic hardship if the action requiring a permit is not undertaken within a time period less than the normal time needed to process the application under standard procedures.

Information about these special emergency processing procedures is located in the enclosed Seattle District Regulatory Program Special Emergency Processing Procedures under Executive Order 14156, dated March 2025. The Seattle District Regulatory Program Special Emergency Processing Procedures are also located on the Seattle District website under Regulatory at: https://www.nws.usace.army.mil/Missions/Civil-Works/Regulatory/.

- 2 -

**Seattle District Regulatory Program Special Emergency Processing Procedures under**
**Executive Order (E.O.) 14156**
**March 2025**

1. PURPOSE: This document outlines Seattle District Regulatory Program's special emergency processing procedures to authorize energy related activities requiring Department of the Army (DA) authorization under Section 10 of the Rivers and Harbors Act of 1899, Section 404 of the Clean Water Act, and Section 103 of the Marine Protection, Research, and Sanctuaries Act of 1972, as amended, for energy and critical minerals identification, development, production, transportation, refining, and generation capacity under E.O. 14156, Declaring a National Energy Emergency.

2. AUTHORITY: Section 10 of the Rivers and Harbors Act of 1899 (33 U.S.C. § 403), Section 404 of the Clean Water Act (33 U.S.C. § 1344) and/or Section 103 of the Marine Protection, Research, and Sanctuaries Act of 1972, as amended (33 U.S.C. § 1314)

3. REFERENCES:

   a. Executive Order 14156 "Declaring a National Energy Emergency" signed 20 January 2025 (90 Fed. Reg. 8433-8437)
   b. 33 CFR § 325.2(e)(4) – Emergency procedures
   c. CECW-CO Standard Operating Procedures for the United States Army Corps of Engineers Regulatory Program, December 2024
   d. CECW-OR Emergency Permit Procedures, 11 December 1997
   e. 50 CFR Part 402 – Interagency Cooperation—Endangered Species Act of 1973, as Amended, specifically 50 CFR § 402.05 - Emergencies
   f. CEQ Memorandum, Emergencies and the National Environmental Policy Act Guidance, 14 September 2020
   g. 36 CFR § 800.12 - Emergency Situations
   h. Appendix C to 33 CFR Part 325, Paragraph 14. Emergency Procedures
   i. 50 CFR part 600, subpart K – Essential Fish Habitat Consultation under the Magnuson-Stevens Act.
   j. 40 CFR Part 121 – State Certification of Activities Requiring a Federal License or Permit
   k. 15 CFR Part 930 – Federal Consistency with Approved Coastal Management Programs

- 3 -

4.    BACKGROUND:

a. Executive Order 14156, "Declaring a National Energy Emergency" issued 20 January 2025, includes the following statements:

*Sec. 1. Purpose. The energy and critical minerals ("energy") identification, leasing, development, production, transportation, refining, and generation capacity of the United States are all far too inadequate to meet our Nation's needs.*

*Sec. 2. Emergency Approvals. (a) The heads of executive departments and agencies ("agencies") shall identify and exercise any lawful emergency authorities available to them, as well as all other lawful authorities they may process, to facilitate the identification, leasing, siting, production, transportation, refining, and generation of domestic energy resources, including, but not limited to, on Federal lands. …*

*Sec. 3. Expediting the Delivery of Energy Infrastructure. (a) To facilitate the Nation's energy supply, agencies shall identify and use all relevant lawful emergency and other authorities available to them to expedite the completion of all authorized and appropriated infrastructure, energy, environmental, and natural resources projects that are within the identified authority of each of the Secretaries to perform or to advance. …*

*Sec. 4. Emergency Regulations and Nationwide Permits under the Clean Water Act…and Other Statutes Administered by the Army Corps of Engineers.( a) Within 30 days from the date of this order, the heads of all agencies, as well as the Secretary of the Army, acting through the Assistant Secretary of the Army for Civil Works shall (i) identify planned or potential actions to facilitate the Nation's energy supply that may be subject to emergency treatment pursuant to the regulations and nationwide permits promulgated by the Corps, or jointly by the Corps and EPA, pursuant to section 404 of the Clean Water Act, 33 U.S.C. 1344, section 10 of the Rivers and Harbors Act of March 3, 1899, 33 U.S.C. 403, and section 103 of the Marine Protection Research and Sanctuaries Act of 1972, 33 U.S.C. 1413 (collectively, the "emergency Army Corps permitting provisions"); and*
*(ii) shall provide a summary report, listing such actions, to the Director of the Office of Management and Budget ("OMB"); the Secretary of the Army, acting through the Assistant Secretary of the*

- 4 -

Army for Civil Works; the Assistant to the President for Economic Policy; and the Chairman of the Council on Environmental Quality (CEQ). Such report may be combined, as appropriate, with any other reports required by this order.
(b) Agencies are directed to use, to the fullest extent possible and consistent with applicable law, the emergency Army Corps permitting provisions to facilitate the Nation's energy supply.

Sec. 8. Definitions…. (a) The term "energy" or "energy resources" means crude oil, natural gas, lease condensates, natural gas liquids, refined petroleum products, uranium, coal, biofuels, geothermal heat, the kinetic movement of flowing water, and critical minerals, as defined by 30 U.S.C. 1606 (a)(3)…

    i.    Per 30 U.S.C. 1606 (a)(3), The term "critical mineral" means any mineral, element, substance, or material designated as critical by the Secretary under subsection (c). The term "critical mineral" does not include— (i) fuel minerals; (ii) water, ice, or snow; (iii) common varieties of sand, gravel, stone, pumice, cinders, and clay.

b.  33 CFR § 325.2(e)(4), states:  Division engineers are authorized to approve special processing procedures in emergency situations. An "emergency" is a situation which would result in an unacceptable hazard to life, a significant loss of property, or an immediate, unforeseen, and significant economic hardship if corrective action requiring a permit is not undertaken within a time period less than the normal time needed to process the application under standard procedures. In emergency situations, the district engineer will explain the circumstances and recommend special procedures to the division engineer who will instruct the district engineer as to further processing of the application. Even in an emergency situation, reasonable efforts will be made to receive comments from interested Federal, state, and local agencies and the affected public. Also, notice of any special procedures authorized and their rationale is to be appropriately published as soon as practicable.

## 5. PROCESSES

a.  Seattle District will fulfill as many standard procedures at 33 CFR § 325.2(a) as are reasonably tailored to the energy emergency situation, but the district will not delay a timely response because of any standard procedures.

- 5 -

b. <u>Public notices</u>.

    i.    For activities requiring standard individual permits, Seattle District will make reasonable efforts tailored to the energy emergency, such as potentially including public notice with up to a 15-day comment period, to explain the rationale for the procedures and to receive comments from interested federal, state, and local agencies, tribes, and the affected and interested public.

        Should a standard individual permit be required for the energy-related activity requiring DA authorization, a public notice will be distributed as soon as practicable to notify all interested federal, state, and local agencies, tribes, and the affected/interested public of the Corps' decision to move forward with processing the proposed action under special emergency processing procedures established for the purposes of E.O. 14156. The notice will identify the special procedures and their rationale. Agencies may include, but are not limited to, the U.S. Fish and Wildlife Service (USFWS), National Marine Fisheries Service (NMFS), U.S. Environmental Protection Agency (USEPA), Tribal Historic Preservation Offices, State Historic Preservation Office (SHPO)s, the Advisory Council on Historic Preservation (ACHP), state resource agencies, and tribal natural or cultural resource agencies. Seattle District will follow current tribal coordination procedures for engaging with tribal natural or cultural resource agencies regarding the pursuit of emergency procedures for identified projects. Records of these contacts and the Seattle Districts evaluation, including any request for extensions of the public comment period, will be part of the written administrative record for the permit decision.

c. <u>Water quality certification</u>. Section 401(a) of the Clean Water Act and 33 CFR § 325.2(b)(1)(ii) preclude the Seattle District from issuing a permit until Section 401 water quality certification has been obtained or has been waived, or if water quality certification has been denied.  This remains true in emergency situations. If the activity requiring DA authorization is not eligible for a general permit where water quality certification has been granted (with or without conditions) or waived for the issuance of that general permit, an individual water quality certification is required to be obtained or waived. A waiver may be deemed to have occurred if the certifying authority has not granted or denied water quality certification prior to the end of the established reasonable period of time (RPOT) for the water quality certification request. For the purpose of emergency permitting, the Seattle District will seek agreement for a RPOT of 25 days.

    i.    40 CFR § 121.6(b) - The federal agency and the certifying authority may jointly agree in writing to the RPOT for the certifying authority to act on the request for certification, provided the RPOT does not

- 6 -

exceed one (1) year from the date that the request for certification was received. Such written agreements may establish categorical reasonable periods of time.

    ii.    40 CFR § 121.6(c) - If the federal agency and the certifying authority do not agree in writing on the length of the RPOT, the reasonable period of time shall be six (6) months.

    iii.    For an activity that requires a water quality certification or waiver, if water quality certification has not been issued or waived for the issuance of a general permit, the district may issue a provisional notification instructing the applicant to provide a copy of the water quality certification or waiver to the district for the general permit decision. If the emergency activity requires an individual permit and water quality certification or waiver is required, the district may issue a provisional notification instructing the applicant to provide a copy of the water quality certification or waiver to the district for the individual permit decision.

d.    <u>Coastal Zone Management Act (CZMA) Consistency Determinations</u>. Section 307(c) of the CZMA of 1972 requires any non-federal applicant for a federal license or permit to conduct an activity affecting land or water uses in the state's coastal zone to furnish a certification that the proposed activity will comply with the state's coastal zone management program. Generally, no permit will be issued until the state has concurred with the non-federal applicant's certification. For an activity that requires a CZMA consistency concurrence or a presumption of concurrence, if a concurrence or presumption of concurrence has not been issued for the issuance of a general permit, Seattle District may issue a provisional notification instructing the applicant to provide a copy of the CZMA consistency concurrence to Seattle District for the general permit decision. If the emergency activity is to be authorized by individual permit and CZMA consistency concurrence or a presumption of concurrence is required, Seattle District may issue a provisional notification instructing the applicant to provide a copy of the CZMA consistency concurrence to Seattle District for the individual permit decision.

e.    <u>Endangered Species Act (ESA) Section 7</u>.

    i.    If the District Engineer determines an emergency energy related action may affect a listed species or designated critical habitat, Seattle District will coordinate with the USFWS and/or NMFS (depending on which listed species or designated critical habitat may be affected) to ascertain measures which will ensure that the emergency actions are not likely to result in a take of a

species or jeopardize the continued existence of the listed species or destroy or adversely modify critical habitat in the manner provided for in 50 CFR 402.05.  The term emergency is defined in the USFWS's and NMFS's section 7 consultation regulations at 50 CFR § 402.05(a) as "…situations involving acts of God, disasters, casualties, national defense or security emergencies, etc."

ii.  Pursuant to 50 CFR § 402.05(b), "[f]ormal consultation shall be initiated as soon as practicable after the emergency is under control. The Federal agency shall submit information on the nature of the emergency action(s), the justification for the expedited consultation, and the impacts to endangered or threatened species and their habitats."  Information submitted by the Corps will include:

- A description of the emergency energy-related action and why it was needed;
- Justification for the expedited consultation prior to implementation of the action; and
- Impacts of the action on listed species or critical habitat.

iii.  If formal consultation is required, as soon as practicable after the emergency is under control, the action agency initiates formal consultation with the USFWS and/or the NMFS if listed species or designated critical habitat have been adversely affected. Although formal consultation occurs after the response to the emergency, procedurally it is treated like any other formal consultation.

iv.  If, after Seattle District coordinates with the USFWS and/or the NMFS to obtain recommendations to minimize the effects of the emergency response action on listed species or their critical habitat, and the district determines the emergency response action may affect, but is not likely to adversely affect listed species or their critical habitat, the section 7 consultation process can be completed if the USFWS and/or the NMFS issue a written concurrence for the "may affect, not likely to adversely affect" determination. That written concurrence may be dependent on the district including measures to minimize effects to listed species and designated critical habitat as permit conditions in the DA authorization.

v.  For adverse effects to listed species and designated critical habitat, at the conclusion of consultation USFWS and/or NMFS will provide their opinion on the effects of the emergency action on listed species and critical habitat.

f.  National Historic Preservation Act Section 106.

i.  The Advisory Council on Historic Preservation has provided information regarding how the Section 106 emergency procedures identified in 36 CFR § 800.12(b) for emergency actions declared under the *E.O. 14156*.

- 8 -

1) Agencies should follow the emergency procedures included in agreement documents if a project already had executed an agreement document under Section 106.

2) Agencies should follow 36 CFR § 800.12(b)(2) where there is not existing agreement document, which would require agency notification to the ACHP, SHPO/THPO, and Tribes/NHO with an opportunity to comment within seven (7) days.  The ACHP would support additional time to comment should the schedule allow. (Note: 36 CFR § 800.12(b)(2) further states the following: "If the agency official determines that circumstances do not permit seven days for comment, the agency official shall notify the Council, the SHPO/THPO and the Indian tribe or Native Hawaiian organization and invite any comments within the time available.")

3) The ACHP has extended the use of 36 CFR § 800.12(b)(2) throughout the duration of the above-mentioned E.O., until its rescinded.

4) Section 110(f) of the National Historic Preservation Act which addresses National Historic Landmarks would still require agencies to avoid actions that would harm National Historic Landmarks and include the National Park Service in the process.

ii.  *Appendix C to 33 CFR Part 325*
   <u>14. Emergency Procedures</u>
   The procedures for processing permits in emergency situations are described at 33 CFR § 325.2(e)(4). In an emergency situation the district engineer will make reasonable efforts tailored to the emergency to receive comments from the SHPO, the THPOs and the ACHP, when the proposed undertaking can reasonably be expected to affect a potentially eligible or designated historic property and will comply with the provisions of Appendix C to the extent time and the emergency situation allows.

iii.  *36 CFR Part 800 – Protection of Historic Properties*
   <u>§ 800.12 Emergency situations</u>

1) <u>Agency procedures.</u>  The agency official, in consultation with the appropriate SHPOs/THPOs, affected Indian tribes and Native Hawaiian organizations, and the Council, is encouraged to develop procedures for taking historic properties into account during operations which respond to a disaster or emergency declared by the President, a tribal government, or the Governor of a State or which respond to other immediate threats to life or property. If approved by the Council, the procedures shall govern the agency's historic preservation responsibilities during any disaster or emergency in lieu of §§ 800.3 through 800.6.

- 9 -

    2) <u>Alternatives to agency procedures</u>.  In the event an agency official proposes an emergency undertaking as an essential and immediate response to a disaster or emergency declared by the President, a tribal government, or the Governor of a state or another immediate threat to life or property, and the agency has not developed procedures pursuant to paragraph (a) of this section, the agency official may comply with section 106 by:

        a) Following a programmatic agreement developed pursuant to § 800.14(b) that contains specific provisions for dealing with historic properties in emergency situations; or

        b) Notifying the Council, the appropriate SHPO/THPO and any Indian tribe or Native Hawaiian organization that may attach religious and cultural significance to historic properties likely to be affected prior to the undertaking and affording them an opportunity to comment within seven days of notification. If the agency official determines that circumstances do not permit seven days for comment, the agency official shall notify the Council, the SHPO/THPO and the Indian tribe or Native Hawaiian organization and invite any comments within the time available.

    3) <u>Local governments responsible for section 106 compliance</u>.  When a local government official serves as the agency official for Section 106 compliance, paragraphs (a) and (b) of this section also apply to an imminent threat to public health or safety as a result of a natural disaster or emergency declared by a local government's chief executive officer or legislative body, provided that if the Council or SHPO/THPO objects to the proposed action within seven (7) days, the agency official shall comply with 36 CFR §§ 800.3 through 800.6.

    4) <u>Applicability</u>.  This section applies only to undertakings that will be implemented within 30 days after the disaster or emergency has been formally declared by the appropriate authority. An agency may request an extension of the period of applicability from the Council prior to the expiration of the 30 days.

g. <u>Essential Fish Habitat Consultation under the Magnuson-Stevens Act</u>. The Essential Fish Habitat (EFH) provisions of the Magnuson-Stevens Fishery Conservation and Management Act require federal agencies to consult with NMFS on proposed actions that may adversely affect EFH.

- 10 -

    i. NMFS's EFH consultation regulations at 50 CFR § 600.920(a)(1) state: "Consultation is required for emergency Federal actions that may adversely affect EFH, such as hazardous material clean-up, response to natural disasters, or actions to protect public safety. Federal agencies should contact NMFS early in emergency response planning but may consult after-the-fact if consultation on an expedited basis is not practicable before taking the action."

    ii. In emergency situations, abbreviated consultations may be conducted under 50 CFR § 600.920(h) ["NMFS and the Federal agency may agree to use a compressed schedule in cases where regulatory approvals or emergency situations cannot accommodate 30 days for consultation…"].

    iii. In emergency situations, expanded consultations may be conducted under 50 CFR § 600.920(i) ["NMFS and Federal agencies may agree to use a compressed schedule in cases where regulatory approvals or emergency situations cannot accommodate 60 days for consultation …"].

h. <u>Tribal consultation and the Corps' tribal trust responsibilities</u>. The Corps' Regulatory Program recognizes the sovereign status of American Indian Tribal Governments (federally recognized American Indian Tribes), and our obligation for meaningful consultation on a government-to-government basis. The Corps is committed to fulfilling our nation's trust responsibility to federally recognized American Indian Tribes in accordance with the United States Constitution, Treaties, Presidential Executive Orders, statutes, and the Supreme Court decisions that gave rise to and define that responsibility.

    1) Many different statutes, regulations, executive orders, and federal policies direct federal agencies to consult with federally recognized American Indian Tribes including the NHPA, as amended. Section 106 of the NHPA, 54 U.S.C. § 306108 and its implementing regulations at 36 CFR Part 800, requires federal agencies to take into account the effects of projects they carry out, license, or financially assist (undertakings) on historic properties and provide the ACHP a reasonable opportunity to comment on those undertakings. The NHPA also requires that, in carrying out its responsibilities under the Section 106 of the NHPA review process, a federal agency must consult with any federally recognized American Indian Tribe that attaches religious and cultural significance to historic properties that may be affected by the agency's undertakings, 54 U.S.C. § 302706 (b).  An accountable process to interact with federally recognized American Indian Tribes is mandated in Executive Order 13175, Presidential Memorandum on Tribal Consultation, Presidential Memorandum on Strengthening Nation-to-Nation Relationships, 26 January 2021, and Corps' Tribal Consultation Policy dated 5 December 2023.

- 11 -

2) Seattle District will document all efforts to initiate and carry out consultation with federally recognized American Indian Tribes under Executive Order 13175 and the Corps' Tribal Consultation Policy. Such documentation, in the form of correspondence, telephone logs, e-mails, etc., should be included in the agency's official Section 106 of the NHPA administrative record. Seattle District should also keep notes so that the consultation record documents the content of consultation meetings, site visits, and phone calls in addition to information about dates and who participated. Doing so allows agencies and consulting parties to review proceedings and correct any errors or omissions, thus facilitating better overall communication.

3) While federally recognized American Indian Tribes are included on the Public Notice distribution list, government-to-government consultation involves steps specific to that form of consultation, and thus public notices are insufficient means to initiate government-to-government consultation. Seattle District will continue utilizing internal tribal coordination procedures to conduct staff-to-staff tribal coordination. While the standard tribal coordination period is 30-days, for projects meeting E.O. 14156 Seattle District will request an abbreviated tribal and agency coordination period. In addition, the Public Notice should not contain locational and sensitive information related to archeological sites, or any other Tribal resource, to protect those sites from harm, theft, or destruction. As reasonable and practicable, consider including the following information when providing project information to federally recognized American Indian Tribes for comment:

   a) A copy of the public notice or agency coordination package, the pre-construction notification or permit application, project plans (potential project footprint(s), staging area(s), access road(s), and/ or project alignment(s)), purpose to be served by the proposed project, and any other relevant information such as a cultural resource assessments and/or surveys. Additional information should include a timeline for the review process, points-of-contact, and hyperlinks to any information that may be available online.
   b) Some federally recognized American Indian Tribes may always want a copy of any cultural resource assessments and/or surveys, while other federally recognized American Indian Tribes may only want to receive the cultural resource assessments and/or surveys at their request.

i.  408 permissions.  DPM CW 2018-10 directs the USACE Regulatory and Section 408 programs to synchronize their reviews under their respective authorities, in order to be responsive to Administration priorities and support efforts toward streamlined federal

- 12 -

environmental reviews. District Commanders should be made aware of any 408 authorizations that may affect a timely regulatory permit decision.

- 13 -

# Enclosure 1

# District Implementation of Special Emergency Processing Procedures Under E.O. 14156

- 14 -

**Enclosure 1 – District Implementation of Special Emergency Processing
Procedures Under E.O. 14156**

1.  Confirm whether the activity meets the criteria for an energy-related emergency per
the E.O.

2.   Assign ORM2 identification number, using appropriate naming convention, and
request additional information, if necessary.

3. When entering the permit action in ORM2, make sure that under the permit-type tab
(Nationwide Permit [NWP], Regional General Permit [RGP], Programmatic General
Permit [PGP], Letter of Permission [LOP], or Standard Individual Permit [SIP]), you
scroll to the bottom, expand the "additional items" section, and next to "24. Emergency
event" click the drop down and select appropriate option ("E.O. 14156"?).

5. Determine the appropriate type of Department of the Army (DA) authorization for the
proposed activity: NWP, RGP, PGP, LOP, or SIP.

6. Complete as much of the initial data entry as possible, such as:

    a. Contact Information-Name, address and telephone numbers of the property
       owner(s), the prospective permittee (project proponent), the consultant, and/or
       the agent, the entity responsible for project operation, maintenance, and
       monitoring;
    b. Location-Provide city, county, state, waterway name, latitude and longitude.
       Provide a vicinity map marking the location of the project;
    c. A description of the proposed activity and its purpose; and
    d. Others such as aquatic resources and jurisdictional determination.

7. Determine whether the proposed activity may require a Section 408 permission. If so,
coordinate with the Section 408 program.

8. Add appropriate sub actions to ORM2, such as:

    a. Applicant Information Request
    b. Section 7 of Endangered Species Act
    c. Section 106 of the National Historic Preservation Act
    d. Tribal coordination/consultation
    e. Section 401 Water Quality Certification
    f. Coastal Zone Management Act consistency determination
    g. Essential Fish Habitat consultation
    h. Internal Corps Coordination

- 15 -

    i.  Coordinate with Applicant/Agent
    j.  Coordinate with External Agency (such as Wild and Scenic Rivers Act consultation, state natural resource agencies)
    k.  Others?

9. <u>Significant Impact</u>. Provide a summary of any consultations with the Council on Environmental Quality in the event the emergency response would result in significant environmental impact, and justification that the activity proposed is the minimum necessary to control the immediate impacts of the emergency in accordance with CEQ guidance on emergencies, including CEQ Memorandum, Emergencies and the National Environmental Policy Act Guidance, 18 December 2024.

10.   <u>Permit Processing and Documentation</u>:

    a.  <u>GP</u>. If the energy activity would satisfy the terms and conditions of an NWP, RGP, or PGP, then you must prepare the Corps Regulatory Headquarters' template (HQ template) documentation memorandum and verification letter required for an NWP, RGP or PGP; or
    b.  <u>LOP</u>. If the energy activity will be authorized by an LOP, then you must prepare the HQ template combined decision document for LOPs and an authorization letter; or
    c.  <u>SIP</u>. The HQ template combined decision document for a standard permit and DA permit form shall be used.  In cases of imminent and substantial endangerment to the health or welfare of a person or a significant loss of property, the district engineer or his/her designee shall first provide the list of the special conditions by e-mail, which the prospective permittee shall acknowledge by return e-mail as being acceptable.  Thereafter, the district engineer or his/her designee may provide verbal authorization with any appropriate special conditions, followed by written authorization the next business day; and
    d.  The documentation for GPs, LOPs, and SIPs, should include summaries of comments received from the appropriate federal, state and local agencies, tribes, and the public and the district's evaluation of those comments. Activities authorized by GPs might not have involved coordination with other entities.

11.   <u>Timing</u>. The district will reach a written decision on whether to authorize activities subject to this SOP within 30 business days, unless extenuating circumstances arise. This is contingent upon receiving a complete application or pre-construction notification and fulfilling the requirements of Section 106 of the National Historic Preservation Act, Section 7 of the Endangered Species Act, and other relevant laws and regulations.

- 16 -

12. <u>After-the-fact permits</u>. A potential safety issue could occur as a result of work stoppage in response to an alleged violation of Section 404 of the Clean Water Act and/or Section 10 of the Rivers and Harbors Act of 1899 and/or Section 103 of the Marine Protection, Research, and Sanctuaries Act of 1972, as amended. In these situations, the district engineer may allow work to continue (subject to appropriate limitations and conditions) while the alleged violation is being resolved [See 33 CFR §§ 326.3 (c)(4) and (d)(1)]. Initial corrective measures to address the safety concerns may also be specified by the district engineer. In addition, generally work can continue in upland areas (away from the alleged violation and in those areas of waters of the U.S. where the ongoing work is in compliance with an existing Corps' permit).

13. <u>Permittee's responsibility</u>. After approved emergency activities requiring DA authorization have been completed, the district may require the permittee, through a permit condition, to submit the following information to the Corps:

    a. Description of completed work including any required restoration or mitigation activities;
    b. Delineation of the amount and location of acres of aquatic resources impacted; and
    c. As-built drawings.

# Enclosure 2

# Applicant Submittals

- 18 -

**Enclosure 2 – Applicant Submittals**

The applicant must provide the following information to the respective District Office via the District's office's email or via the Regulatory Request System:

a. Name of responsible party (having legal interest to perform the work) and day-time phone number. Agent representing the applicant must provide written verification of their designation as agent.
b. Work Description:
    i. The description of work must include an explanation of the nature and circumstance of the emergency and why the proposed actions are necessary to control the immediate impacts of the emergency;
    ii. The project description must include all proposed new work, and any work completed and/or begun without prior written authorization from the Corps;
    iii. Dredging: Provide area (square feet) of area to be dredged and estimated cubic yards of material to be dredged. Provide location of disposal area and retention method of dredged material;
    iv. Filling of Waters and Wetlands: Provide area (square feet) of area to be filled, type of waters or wetlands, and estimated cubic yards of material that will be placed in waters or wetlands. Provide type and source of fill material and retention method;
    v. Legible Site Plan showing proposed work area: Construction drawings, if available, are to be provided;
    vi. Vicinity Map showing the work area: Street address, city, county, state, include Section, Township, and Range, etc.;
    vii. GIS shapefiles of project site plan, waters of the United States impact boundaries;
    viii. Statement from applicant acknowledging the following:
        1) They will perform all mitigation required by Corps;
        2) The work would be performed in a manner that would avoid and minimize impact to waters of the United States to the maximum extent practicable;
        3) Should the permittee discover any previously unknown historic, cultural or archeological remains and artifacts while accomplishing the activity authorized by the Corps, they must immediately notify the district engineer of what they have found, and to the maximum extent practicable, avoid construction activities that may affect the remains and artifacts until the required coordination has been completed. The district engineer will initiate the Federal, Tribal, and state coordination required to determine if the items or remains warrant a recovery effort or if the site is eligible for listing in the National Register of Historic Places;

- 19 -

4) Description of the potential impacts that may occur to species federally listed as threatened or endangered under the Endangered Species Act, or to designated critical habitat;
5) The work would be completed in an expeditious manner; and
6) In areas of temporary aquatic resource fill, the impacted area would be restored as near as possible to pre-emergency conditions.
7) If the work may result in a discharge into waters of the United States, the project proponent will seek water quality certification or a waiver from the appropriate certifying authority.
8) If the work will affect a coastal use or resource, the project proponent will request coastal zone consistency concurrence from the appropriate coastal management agency.