The Honorable Jamal Whitehead

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| STATE OF WASHINGTON, STATE OF CALIFORNIA, et al, | NO. 2:25-cv-00869 |
| Plaintiffs, | **PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS** |
| v. | NOTE ON MOTION CALENDAR: June 4, 2026 |
| DONALD TRUMP, et al, | |
| Defendants. | ORAL ARGUMENT REQUESTED |

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO DISMISS  -
NO. 2:25-CV-00869

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND .................................................................................................. 2

        A.   The Permitting Process Is Designed to Avoid, Minimize, and Mitigate
             Impacts to the Environment, Historic Properties, and Endangered Species ............. 2

        B.   President Trump Directs Federal Agencies to Use Emergency Procedures for
             Projects Involving His Preferred Energy Sources ...................................................... 4

        C.   The Corps Is Processing Preferred Energy Projects Through Emergency
             Procedures .................................................................................................................. 5

        D.   ACHP Has Processed Hundreds of Preferred Energy Projects Through
             Emergency Procedures ............................................................................................... 7

        E.   Interior Has Implemented Emergency Procedures to Approve Significant
             Projects ....................................................................................................................... 7

III.    ARGUMENT ...................................................................................................... 8

        A.   Plaintiffs Establish Standing ...................................................................................... 9

             1.   Plaintiffs adequately plead procedural injury ................................................... 9

                  a.   Agency Defendants' implementation of the EO bypasses ordinary
                       procedural protections in implementing the EO ...................................... 10

                  b.   The use of emergency procedures creates a reasonably probable risk
                       that environmental consequences are overlooked, a cognizable injury
                       for standing .............................................................................................. 11

             2.   Plaintiffs identify non-procedural harms ........................................................ 15

             3.   Defendants' arguments against injury fail ...................................................... 16

        B.   Plaintiffs' Claims Are Ripe ...................................................................................... 17

        C.   Plaintiffs Challenge "Final Agency Action" ............................................................ 19

             1.   Each agency's emergency procedures mark the consummation of its
                  decision to implement the EO ......................................................................... 20

             2.   Legal consequences flow from the emergency procedures .............................. 21

             3.   Plaintiffs challenge discrete agency actions, not broad agency programs ....... 22

PLAINTIFFS' RESPONSE TO                    i
DEFENDANTS' MOTION TO DISMISS  -
NO. 2:25-CV-00869

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

D.  Dismissal of Plaintiffs' Ultra Vires Claim Against the President is Unwarranted.......................................................................................... 23

E.  Any Dismissal for Lack of Subject Matter Jurisdiction Should Be Without Prejudice .......................................................................................... 26

IV.  CONCLUSION ................................................................................................. 26

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO DISMISS  -
NO. 2:25-CV-00869

ii

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

## TABLE OF AUTHORITIES

**Cases**

*Am. Sch. of Magnetic Healing v. McAnnulty*,
  187 U.S. 94 (1902) ..................................................................................... 23

*Armstrong v. Exceptional Child Ctr., Inc.*,
  575 U.S. 320 (2015) ................................................................................... 25

*Bennett v. Spear*,
  520 U.S. 154 (1997) ................................................................................... 19

*California v. Azar*,
  911 F.3d 558 (9th Cir. 2018) ....................................................................... 9

*Canatella v. California*,
  404 F.3d 1106 (9th Cir. 2005) ................................................................... 26

*Carpenters Indus. Council v. Zinke*,
  854 F.3d 1 (D.C. Cir. 2017) ....................................................................... 16

*Cent. Delta Water Agency v. United States*,
  306 F.3d 938 (9th Cir. 2002) ..................................................................... 12

*Chamber of Commerce v. Reich*,
  74 F.3d 1322 (D.C. Cir. 1996) ................................................................... 25

*Citizens for Better Forestry v. U.S. Dep't of Agric.*,
  341 F.3d 961 (9th Cir. 2003) ............................................................ 9, 10, 15

*City & Cnty. of San Francisco v. Trump*,
  897 F.3d 1225 (9th Cir. 2018) ................................................................... 24

*Columbia Riverkeeper v. U.S. Coast Guard*,
  761 F.3d 1084 (9th Cir. 2014) .............................................................. 20, 21

*Cottonwood Env't. Law Ctr. v. U.S. Forest Serv.*,
  789 F.3d 1075 (9th Cir. 2015) ................................................................... 16

*Dames & Moore v. Regan*,
  453 U.S. 654 (1981) ................................................................................... 24

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO DISMISS -
NO. 2:25-CV-00869

iii

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

*Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*,
  36 F.4th 850 (9th Cir. 2022) .......................................................................... 10, 17, 18

*Fleck & Assoc., Inc. v. City of Phoenix*,
  471 F.3d 1100 (9th Cir. 2006) ............................................................................... 26

*Frigard v. United States*,
  862 F.2d 201 (9th Cir. 1988) ................................................................................. 26

*FTC v. Credit Bureau Ctr., LLC*,
  937 F.3d 764 (7th Cir. 2019) ................................................................................. 24

*Gunderson v. Hood*,
  268 F.3d 1149 (9th Cir. 2001) ............................................................................... 20

*Kāpaʻa v.Trump*,
  794 F. Supp. 3d 793 (D. Haw. 2025) ................................................................. 20, 21

*Karuk Tribe of Cal. v. U.S. Forest Serv.*,
  681 F.3d 1006 (9th Cir. 2012) ........................................................................... 16, 17

*Lane Cnty. Audubon Soc'y v. Jamison*,
  958 F.2d 290 (9th Cir. 1992) ................................................................................. 17

*Larson v. Domestic & Foreign Com. Corp.*,
  337 U.S. 682 (1949) .............................................................................................. 25

*League of United Latin Am. Citizens v. Exec. Office of the President*,
  780 F. Supp. 3d 135 (D.D.C. 2025) ....................................................................... 24

*Learning Resources, Inc. v. Trump*,
  146 S. Ct. 628 (2026) ............................................................................................ 25

*Leedom v. Kyne*,
  358 U.S. 184 (1958) .............................................................................................. 23

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990) .............................................................................................. 22

*Mach Mining, LLC v. EEOC*,
  575 U.S. 480 (2015) .............................................................................................. 19

*Montana Wildlife Fed'n v. Haaland*,
  127 F.4th 1 (9th Cir. 2025) ...................................................................................... 9

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO DISMISS  -
NO. 2:25-CV-00869

iv

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

*Murphy Co. v. Biden*,
65 F.4th 1122 (9th Cir. 2023) ......................................................................................... 25

*Nat. Res. Defense Council v. Jewell*,
749 F.3d 776 (9th Cir. 2014) ......................................................................................... 16

*Nat'l Labor Relations Bd. v. Siren Retail Corp.*,
99 F.4th 1118 (9th Cir. 2024) ....................................................................................... 20

*Nuclear Regul. Comm'n v. Texas*,
605 U.S. 665 (2025) ................................................................................................. 23, 24

*Ohio Forestry Ass'n, Inc. v. Sierra Club*,
523 U.S. 726 (1998) ................................................................................................. 18, 19

*Oregon Nat. Desert Ass'n v. U.S. Forest Serv.*,
465 F.3d 977 (9th Cir. 2006) ......................................................................................... 22

*Planned Parenthood Great Nw. v. Labrador*,
122 F.4th 825 (9th Cir. 2024) ....................................................................................... 17

*Pub. Lands for the People, Inc. v. U.S. Dep't of Agric.*,
733 F. Supp. 2d 1172 (E.D. Cal. 2010) ........................................................................ 18

*Saliba v. U.S. Sec. & Exch. Comm'n*,
47 F.4th 961 (9th Cir. 2022) ......................................................................................... 19

*San Francisco Herring Ass'n v. Dep't of the Interior*,
946 F.3d 564 (9th Cir. 2019) ................................................................................... 20, 26

*Seattle Audubon Soc'y. v. Espy*,
998 F.2d 699 (9th Cir. 1993) ......................................................................................... 22

*Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*,
959 F.3d 341 (9th Cir. 2020) ......................................................................................... 19

*Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*,
968 F.3d 738 (9th Cir. 2020) ......................................................................................... 18

*Stavrianoudakis v. U.S. Fish & Wildlife Serv.*,
108 F.4th 1128 (9th Cir. 2024) ................................................................................ 17, 18

*Stormans, Inc. v. Selecky*,
586 F.3d 1109 (9th Cir. 2009) ....................................................................................... 18

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO DISMISS  -
NO. 2:25-CV-00869

v

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) ................................................................................................... 16

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ................................................................................................... 17

*Tex. & Pac. Ry. Co. v. Abilene Cotton Oil Co.*,
  204 U.S. 426 (1907) ................................................................................................... 24

*Twede v. Univ. of Washington*,
  309 F. Supp. 3d 886 (W.D. Wash. 2018) ...................................................... 9, 12, 15

*Vassiliades v. Rubio*,
  792 F. Supp. 3d 1 (D.D.C. 2025) ............................................................................... 25

*Washington v. Trump*,
  814 F. Supp. 3d 1173 (W.D. Wash. 2026) ................................................................ 23

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*,
  586 U.S. 9 (2018) ....................................................................................................... 19

*Wilderness Soc'y v. Thomas*,
  188 F.3d 1130 (9th Cir. 1999) ................................................................................... 19

*Youngstown Sheet & Tube Co. v. Sawyer*,
  343 U.S. 579 (1952) ................................................................................................... 25

**Statutes**

16 U.S.C. § 1531(b) ........................................................................................................ 2

16 U.S.C. § 1536(a)(3) .................................................................................................... 4

33 U.S.C. § 1251(a) ........................................................................................................ 2

33 U.S.C. § 1311(a) ........................................................................................................ 2

33 U.S.C. § 1341(a)(1) .................................................................................................... 2

42 U.S.C. § 4321 ............................................................................................................. 2

42 U.S.C. § 4332(C) ....................................................................................................... 3

42 U.S.C. § 4336(b)(1) .................................................................................................... 3

42 U.S.C. § 4336(b)(2) .................................................................................................... 3

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO DISMISS  -
NO. 2:25-CV-00869

vi

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

50 U.S.C § 1631 ................................................................................................ 23, 24

54 U.S.C. § 300101 ................................................................................................ 2

54 U.S.C. § 306108 ................................................................................................ 3

54 U.S.C. § 306112 ................................................................................................ 3

**Rules**

Federal Rules of Civil Procedure 12(b)(1) ............................................................. 8

Federal Rules of Civil Procedure 12(b)(6) ............................................................. 8

**Regulations**

33 C.F.R. § 320 ....................................................................................................... 3

33 C.F.R. § 323 ....................................................................................................... 3

33 C.F.R. § 325 ....................................................................................................... 3

33 C.F.R. § 325.2 .................................................................................................... 6

33 C.F.R. § 325.2(b)(5) ......................................................................................... 21

33 C.F.R. § 325.2(e)(4) ....................................................................................... 3, 6

33 C.F.R. § 330.4.(f)(2) ........................................................................................ 21

33 C.F.R. 330.4(f)-(g) ............................................................................................ 3

36 C.F.R. § 800.3 ................................................................................................... 7

36 C.F.R. §§ 800.3-800.13 ..................................................................................... 3

36 C.F.R. § 800.3(c) ............................................................................................... 3

36 C.F.R. § 800.11 ................................................................................................. 7

36 C.F.R. § 800.12 ................................................................................................. 7

36 C.F.R. § 800.12(a) ............................................................................................. 3

36 C.F.R. § 800.12(d) ............................................................................................. 4

36 C.F.R. § 800.6 ................................................................................................... 7

43 C.F.R. § 46.150(a) ............................................................................................. 4

50 C.F.R. §§ 402.01-402.16 ................................................................................... 4

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO DISMISS -
NO. 2:25-CV-00869

vii

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

50 C.F.R. § 402.05(a) .................................................................................................. 4

50 C.F.R. § 402.05(b) .............................................................................................. 4, 21

50 C.F.R. § 402.14(c) .................................................................................................. 4

50 C.F.R. §§ 402.14(h)-(j) ........................................................................................... 4

90 Fed. Reg. 8433 ............................................................................................... 4, 5, 24

90 Fed. Reg. 8434 ...................................................................................................... 24

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO DISMISS  -
NO. 2:25-CV-00869

viii

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

## I.    INTRODUCTION

Across the country and in each Plaintiff State, Defendants have processed, or identified for processing, thousands of non-emergency energy activities to be fast-tracked under emergency procedures. By their plain terms, these emergency procedures are designed for disasters, floods, explosions, spills, and other unexpected events where potential environmental harms from rushing reviews are offset by the need for *immediate* action—not for advancing general policy preferences for certain types of energy projects. This policy goal, however, is being accomplished via a coordinated effort spanning multiple agencies and put into motion by a single action: the President's declaration of a false "energy emergency."

Defendants do not deny the scale of this effort or that their decisions to use emergency procedures for non-emergency projects bypass critical environmental review that would otherwise be required. Instead, Defendants assert Plaintiffs must engage in a game of judicial whack-a-mole, challenging one-by-one an onslaught of individual permitting decisions rather than the overarching policy directives Defendants issued that broadly facilitate pushing non-emergency projects through emergency procedures.

Defendants' arguments fail. Defendants do not even reference, much less overcome, the standard for establishing standing to challenge procedural violations. That bar is purposefully low. Because of the irreversible nature of environmental harms, Plaintiffs need only establish a procedural right designed to protect their interests and a *reasonable probability* that those interests will be injured. Plaintiffs meet this standard here, especially at this stage of the proceedings where Plaintiffs' factual allegations must be considered as true. As the First Amended Complaint and Plaintiffs' supporting declarations establish, Defendants' abbreviated environmental review—in both specific, identified projects and across hundreds of other actions—substantially increase the risk that significant environmental impacts will be overlooked and systematically threaten concrete natural resources Plaintiffs own and/or manage.

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO DISMISS  -
NO. 2:25-CV-00869

1

Defendants' actions are also final and ripe. The policies challenged here represent the culmination of Defendants' affirmative decisions to push the square peg of non-emergency projects through the round hole of their existing emergency procedures. Those decisions have significant consequences and are ripe for review. And, finally, the President's abuse of the National Emergencies Act is not immune from review.

Defendants' motion to dismiss should be denied.

## II.    BACKGROUND

### A.    The Permitting Process Is Designed to Avoid, Minimize, and Mitigate Impacts to the Environment, Historic Properties, and Endangered Species

The Clean Water Act, Endangered Species Act, National Historic Preservation Act, and National Environmental Policy Act work together to ensure federal agencies consider the environmental impacts of their actions and, where feasible, avoid, minimize, or mitigate such impacts. *See* 33 U.S.C. § 1251(a) (Clean Water Act's purpose is to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters"); 16 U.S.C. § 1531(b) (Endangered Species Act's purpose is to conserve endangered species and the ecosystems on which they depend); 54 U.S.C. § 300101 (National Historic Preservation Act's purpose is to contribute to and encourage preservation of historic properties); 42 U.S.C. § 4321 (National Environmental Policy Act's purpose is to prevent or eliminate damage to the environment).

The Clean Water Act prohibits discharges of any pollutant into waters of the United States except, as relevant here, authorized by a section 404 permit issued by the U.S. Army Corps of Engineers (Corps). *See* 33 U.S.C. § 1311(a). Before the Corps may issue a permit, the affected state must independently certify within one year that the proposed discharge will comply with state water quality requirements, or waive certification. 33 U.S.C. § 1341(a)(1) (Section 401 certification).

As part of the permitting process, the Corps must evaluate several factors affecting the public interest, consider environmental impacts under the National Environmental Policy Act,

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO DISMISS -
NO. 2:25-CV-00869

2

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

consult with expert agencies pursuant to the National Historic Preservation Act and the Endangered Species Act, and provide for public comment. *See* 33 C.F.R. §§ 320, 323, 325. In some cases, the Corps may authorize a project pursuant to a general permit, but projects requiring Endangered Species Act or National Historic Preservation Act consultation may not proceed under such permits until consultation is complete. *See* 33 C.F.R. 330.4(f)-(g). Although no statutory provision allows emergency permits, Corps regulations authorize the agency to "approve special processing procedures in [a defined set of] emergency situations." 33 C.F.R. § 325.2(e)(4).

The National Environmental Policy Act requires that, for all major federal actions having significant effects on the environment, the agency must prepare a "detailed [environmental impact statement]" of "reasonably foreseeable environmental effects" of the proposed action and a "reasonable range of alternatives." 42 U.S.C. §§ 4332(C), 4336(b)(1). If the action "does not have a reasonably foreseeable significant effect on the . . . environment, or if the significance [] is unknown," the agency must prepare an environmental assessment explaining that determination. 42 U.S.C. § 4336(b)(2).

Section 106 of the National Historic Preservation Act requires agencies to consult with stakeholders to identify and address effects on historic properties. 54 U.S.C. § 306108; *see also* 36 C.F.R. 800.3-800.13; Declaration of Julianne Polanco at ¶¶ 7-8. State Historic Preservation Officers have 30 days to review and comment on proposals during the Section 106 process. *See* 36 C.F.R. § 800.3(c). Section 106 cannot be waived during emergencies, *see* 54 U.S.C. § 306112, but the federal Advisory Council on Historic Preservation's (ACHP) implementing regulations allow for an informal, expedited process "during operations which respond to a disaster or emergency declared by the President, a tribal government, or the Governor of a State or which respond to other immediate threats to life or property." 36 C.F.R. § 800.12(a). The regulations may be used only for "undertakings that will be implemented within 30 days after the disaster

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO DISMISS -
NO. 2:25-CV-00869

3

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

or emergency has been formally declared by the appropriate authority," unless ACHP extends them. *Id*. § 800.12(d).

Endangered Species Act Section 7 requires agencies to consult with the U.S. Fish and Wildlife Service and/or National Marine Fisheries Service (Services)—whenever a project may affect an endangered or threatened species or their critical habitat. 16 U.S.C. § 1536(a)(3); *see also* 50 C.F.R. §§ 402.01-402.16. Consultation requires the permitting agency to provide the Services with detailed information and the best scientific and commercial data available and to conference with the Services. *See* 50 C.F.R. § 402.14(c). The Services then prepare a biological opinion providing reasonable measures to avoid harming endangered species. *Id*. § 402.14(h)-(j). In emergency situations "involving acts of God, disasters, casualties, national defense or security emergencies, etc.," an agency may delay formal consultation until "after the emergency is under control." *Id*. § 402.05(a), (b).

Like the Corps, the Department of Interior (Interior) issues permits and takes other actions requiring compliance with environmental laws. Interiors' National Environmental Policy Act implementing regulations provide a similarly narrow emergency exception to standard procedures when "necessary to control the immediate impacts of the emergency that are urgently needed to address imminent threats to life, property, or important natural, cultural, or historic resources." 43 C.F.R. § 46.150(a).

**B.    President Trump Directs Federal Agencies to Use Emergency Procedures for Projects Involving His Preferred Energy Sources**

On day one, President Trump declared a "National Energy Emergency." *See* Executive Order 14156, 90 Fed. Reg. 8433 (Jan. 20, 2025) (the EO). The "emergency" is a claimed need to provide a more "reliable, diversified, and affordable supply of energy." *Id*. The President identified the cause of this emergency as a disagreement with the policies of the previous administration and local policies in the Northeast and West Coast. *Id*.

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO DISMISS  -
NO. 2:25-CV-00869

4

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

To address the purported "emergency," the President directed agencies to identify and exercise any emergency authority they have "to facilitate the identification, leasing, siting, production, transportation, refining, and generation of domestic energy resources." *Id*. The President specifically ordered the Corps to invoke its emergency permitting provisions for Clean Water Act permits and ordered all agencies to use the "[Endangered Species Act] regulation on consultations in emergencies." *Id*.

The EO, while premised on purported general shortages of energy supplies, only requires expedited permits for projects involving fossil fuels, nuclear, geothermal, hydroelectric power, and critical minerals. *Id*. Consistent with President Trump's policy favoring fossil fuels and stymieing renewable energy, the EO ignores wind and solar resources, *see* Complaint ¶ 101, and the administration has canceled or delayed wind and solar projects, including those on the cusp of providing large amounts of low-cost electricity to the grid. *See* Complaint ¶¶ 106-7.

To implement the EO, the Corps, ACHP, and Interior (together, Agency Defendants) issued emergency procedures to advance the President's preferred energy projects and applied those procedures to expedite and skip environmental review for thousands of projects across the country.

**C.      The Corps Is Processing Preferred Energy Projects Through Emergency Procedures**

On February 17, 2025, the Corps identified 688 projects it intended to process on an expedited basis. Complaint ¶ 125. The list contained a mix of minor or routine projects, as well as large infrastructure projects. *See* Dkt. #55-6. Shortly after posting the list to its website, the Corps created a new "emergency" category for favored energy projects and assigned this new designation to hundreds of existing permit applications. Complaint ¶ 125. Three days later, following media coverage, the Corps removed the list from its website. Since then, most Corps action to implement the EO have been shielded from public view, disclosed only through FOIA requests and FOIA litigation. *See* Declaration of Hannah Connor ¶¶ 4-6, 8-15.

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO DISMISS -
NO. 2:25-CV-00869

5

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

In Spring 2025, the Corps began contacting states regarding the emergency procedures, notifying them that the Corps expected states to expedite project review. *See* Complaint ¶ 128; Dkt. # 55-7; Declaration of Jeffrey Caiola ¶¶ 7-9. The Corps formalized its emergency procedures for preferred energy projects by issuing template procedures for all districts to employ. Complaint ¶ 128; Dkt. #55-8. The procedures altered every protection normally accounted for in ordinary permitting that ensure adverse effects are not overlooked. Complaint ¶ 139. First, the Corps established a 30-day time limit as "the slowest the permit process may move, under this emergency," directing districts to "not delay timely responses because of any standard procedure." Dkt. #55-8 at 4-5.

Second, under the EO, the Corps has restricted opportunities for consultation with expert agencies, instructing Corps' staff to invoke the Endangered Species Act emergency regulation delaying formal consultation. *Id*. at 13-14. Under those emergency regulations, formal consultation is skipped; instead, the Corps notifies the Services of the preferred energy project and cites the EO, delays formal Endangered Species Act consultation indefinitely, and approves the permit. *See* Complaint ¶ 139; *see also* Lee Decl. ¶¶ 30-37 (identifying 147 permit actions under the EO affecting endangered species or their habitat in Plaintiffs States). For impacts to historic properties, the Corps follows the abbreviated consultation procedures described below. *See id*.; Dkt. 55-8 at 15-16.

Third, the Corps has eliminated or limited public comment. While the Corps regulations require a 30-day comment period for individual permits, *see* 33 C.F.R. § 325.2, under the emergency procedures, public comment is not required. 33 C.F.R. § 325.2(e)(4). For many projects, the Corps has offered just seven calendar days for public comment. *See* Complaint ¶ 190; Lee Decl. ¶ 26.

After adopting the emergency permitting procedures, Corps districts began utilizing them for any project involving preferred energy sources. Dkt. # 55-6; Connor Decl. ¶ 18, Ex. D. Many

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO DISMISS -
NO. 2:25-CV-00869

6

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

of these projects threaten to harm water quality, aquatic ecosystems, and endangered species or their habitat. *See* Complaint ¶ 157; Lee Decl. ¶¶ 34-37, 43-47.

**D.    ACHP Has Processed Hundreds of Preferred Energy Projects Through Emergency Procedures**

ACHP published emergency procedures for preferred energy projects on its website. Complaint ¶ 148; Dkt. #55-11. The procedures were intended to "assist agencies in implementing the terms of the [EO]" for "historic preservation reviews." Dkt. #55-11 at 2. ACHP instructed agencies to invoke its emergency regulation, 36 C.F.R. § 800.12, for preferred energy projects. *Id*. ACHP clarified that these procedures deviate significantly from the standard consultation process. For instance, agencies need not: make the required formal determination of whether their actions may affect National Historic Preservation Act resources or document their rationale (*see* 36 C.F.R. § 800.11); execute a memorandum of agreement to resolve effects to National Historic Preservation Act resources (*see* 36 C.F.R. § 800.6); or plan for public involvement (*see* 36 C.F.R. § 800.3). *See* Dkt. 55-11. States and tribes ordinarily have thirty days to review and comment on proposals; the emergency procedures limit that time to just seven calendar days. *See id*.; 36 C.F.R. § 800.3. ACHP extended the emergency to run for the duration of the EO. *See id*.

Soon thereafter, the Corps and other agencies began sending State Historic Preservation Officers notices of expedited, emergency consultations under the ACHP emergency procedures. For example, as of March 30, 2026, California alone received 52 notices demanding expedited consultation pursuant to the emergency procedures. Polanco Decl. ¶ 10; *see also* Declaration of Amy Spong ¶ 17; Wood Decl. ¶ 5, Ex. A (nationwide use of ACHP emergency procedures pursuant to the EO).

**E.    Interior Has Implemented Emergency Procedures to Approve Significant Projects**

Interior has also formalized emergency procedures to implement the EO. Complaint ¶ 142. Interior's procedures involve expedited time limits for agency review, limited public

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO DISMISS  -
NO. 2:25-CV-00869

7

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

comment, and reduced consultation with expert agencies. *Id.* ¶¶ 145-46. For all preferred energy projects, Interior will replace its standard compliance with the National Environmental Policy Act, the Endangered Species Act, and the National Historic Preservation Act, with informal and expedited emergency procedures *See* Dkt. #55-10. Under Interior's emergency procedures, environmental review is reduced from an average of two years to, at most, 28 days. *Id.* at 3. For projects Interior determines have no "significant" environmental impacts, the agency will prepare and publish an environmental assessment within 14 days of receiving a complete application. *Id*. For projects Interior determines have significant impacts, Interior will publish a notice of intent to prepare an environmental impact statement and may offer a brief public comment period on the notice. *Id*. Within 28 days of publishing the notice, Interior will finalize its environmental impact statement. *Id.* Interior will not provide an opportunity for public comment on environmental assessments, draft environmental impact statements, or its record of decision. *Id.*

Like the Corps, Interior staff invoke the Endangered Species Act emergency regulation to delay formal consultation indefinitely. Interior also utilizes the ACHP emergency procedures in lieu of required National Historic Preservation Act consultation. Wood Decl. ¶ 5, Ex. A. Interior remains opaque regarding projects subject to its emergency procedures, but the agency has announced its review and approval of several significant projects in a matter of days.[1]

### III.    ARGUMENT

Defendants move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[2] Under both Rules, the Court accepts well-plead factual allegations as true and

---

[1] *See, e.g.*, https://www.doi.gov/pressreleases/interior-expedites-permitting-critical-energy-project-address-national-energy (announcing uranium mine on Utah/Colorado border); https://www.fws.gov/press-release/2026-01/permitting-approved-boost-energy-reliability (expedited approval of 226-mile transmission line in Nebraska under the EO).

[2] Defendants do not contest facts but provide a brief declaration to contextualize their argument that "no additional process" was required with respect to two projects in Wisconsin. Dkt. #64 at 10.

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO DISMISS -
NO. 2:25-CV-00869

8

construes them in the light most favorable to the plaintiff. *Twede v. Univ. of Washington*, 309 F. Supp. 3d 886, 893 (W.D. Wash. 2018) (stating the standard of review under each Rule). As set out below, Defendants fail to show dismissal is warranted under either standard.[3]

**A.    Plaintiffs Establish Standing**

To establish standing, plaintiffs must show an injury-in-fact fairly traceable to the challenged action and redressable by the court. *See Montana Wildlife Fed'n v. Haaland*, 127 F.4th 1, 35 (9th Cir. 2025). Defendants do not challenge redressability, focusing instead almost entirely on an assertion that Plaintiffs fail to detail specific applications of emergency procedures. Dkt. #64 at 9-14. Defendants also assert that emergency procedures do not cause Plaintiffs' harms from increased workload. Dkt. #64 at 11.

Defendants are wrong on all counts. As set out below, Defendants' myopic read of the Complaint fundamentally misconstrues Plaintiffs' alleged harms and ignores that Plaintiffs need only show a reasonable probability of harm to establish injury from procedural violations of environmental statutes. Moreover, Plaintiffs' injuries go beyond probabilities. Both the Complaint and declarations submitted herein contain numerous examples of concrete harms Defendants have caused and will continue to cause.

**1.    Plaintiffs adequately plead procedural injury**

Plaintiffs asserting violation of a procedural right must demonstrate: (1) a procedural right that, if exercised, could have protected concrete interests; (2) the violated procedures are designed to protect those interests; and (3) the challenged action's threat to those interests is "reasonably probable." *Citizens for Better Forestry v. U.S. Dep't of Agric.*, 341 F.3d 961, 972 (9th Cir. 2003); *see also California v. Azar*, 911 F.3d 558, 570 (9th Cir. 2018). In the context of environmental reviews, standing does not depend "on 'proof' that the challenged federal project will have particular environmental effects," because that would essentially require the plaintiff

---

[3] Plaintiffs agree to dismiss without prejudice New Mexico's Endangered Species Act claim for failure to send the required 60-day pre-suit notice.

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO DISMISS -
NO. 2:25-CV-00869

9

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

to "conduct the same environmental investigation that he seeks in his suit to compel the agency to undertake." *Citizens for Better Forestry*, 341 F.3d at 972. Indeed, the Ninth Circuit has long held that failing to follow the procedure that environmental laws require denies the laws' "fundamental safeguards" given the risk that "environmental consequences might be overlooked." *Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*, 36 F.4th 850, 870 (9th Cir. 2022) (citation modified).

Defendants are correct, Dkt. #64 at 9, that the Complaint alleges Defendants' actions illegally abridge Plaintiffs' participation in ways that cause tangible injury. *See, e.g.*, Complaint ¶¶ 156-57, 161. But Defendants neglect the primary thrust of Plaintiffs' procedural injury: i.e., that Defendants bypassing their own normal procedures for approving permits—on a massive scale and for non-emergency situations that do not warrant such treatment—results in a reasonable probability of environmental harm. Plaintiffs establish these harms.

          a.      **Agency Defendants' implementation of the EO bypasses ordinary procedural protections in implementing the EO**

The Complaint and Plaintiffs' declarations painstakingly document Defendants' implementation of the EO. The Complaint details the Corps' recategorization of hundreds of existing permit applications as "emergency" projects under the EO. Complaint ¶ 125. That initial scope has exploded. A Corps Assistant Secretary testified last year that "Trump has delivered close to 800 permits for energy related, resource-related activities."[4] As of late 2025, the Corps disclosed it had completed, considered, or is processing at least 6,248 permits under the EO "emergency" category, including in each Plaintiff State. Connor Decl. ¶ 18, Ex. D.

ACHP and Interior are also implementing the EO. To date, ACHP has fast-tracked review of at least 777 projects' impacts on cultural and historical resources under its EO procedures,

---

[4] Testimony of Adam Telle, U.S. Senate Committee on Environment & Public Works (September 17, 2025), available at:
https://www.epw.senate.gov/public/index.cfm/2025/9/oversight-of-the-us-army-corps-of-engineers at 1:44:56.

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO DISMISS -
NO. 2:25-CV-00869

10

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

including at least 275 projects in Plaintiff States. Declaration of Kelly Wood ¶ 5, Ex. A. And while Interior has been less transparent regarding its implementation of the EO, the Complaint and declarations detail several significant projects' effects on Plaintiff States. *See, e.g.*, Declaration of Sarah Aminzadeh ¶¶ 15-51 (project for hydraulic fracturing at Platform Gilda, an oil and gas drilling platform offshore of California); Complaint ¶ 172-178 (approval of an oil export terminal that will significantly increase oil train traffic along the Colorado River through the state of Colorado).[5]

### b. The use of emergency procedures creates a reasonably probable risk that environmental consequences are overlooked, a cognizable injury for standing

Defendants' assertion that Plaintiffs have not shown injury from this large-scale rollout defies both common sense and the record, requiring this Court to accept that pushing thousands of energy permits around the country through abbreviated processes fails to create even a "credible threat" to Plaintiffs' environments and natural resources.

For one, Defendants fail to set out—let alone grapple with—the legal standards for establishing those injuries cited above. Critically, for each project Plaintiffs identify, there is no question that Defendants' emergency procedures direct truncated or bypassed public comment, avoiding or short-shrifting National Environmental Policy Act review, and abbreviated or post-hoc reviews under the at least the Endangered Species Act, and the National Historic Preservation Act. Complaint ¶¶ 129-31, 135-36, 139, 145-46. Plaintiffs have procedural rights under each of the statutes that Defendants' emergency procedures minimize or bypass, and those statutes are designed to protect (among other things) natural resources Plaintiffs own and/or manage. Complaint ¶ 154-59; *see also* Lee Decl. ¶¶ 12-19; Spong Decl. ¶¶ 3-8; Polanco Decl. ¶¶ 5-8.

---

[5] *See also* https://www.doi.gov/pressreleases/interior-expedites-permitting-critical-energy-project-address-national-energy (announcing uranium mine on Utah/Colorado border).

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS - NO. 2:25-CV-00869

11

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

It defies belief and binding case law to suggest that circumventing environmental review on such a massive scale fails to create a reasonable probability of harm by increasing the risk of overlooking environmental impacts. This *alone* is enough to establish injury at this stage of the proceedings, where Defendants have not filed administrative records, discovery has not commenced, and Plaintiffs' factual allegations that Defendants are indeed bypassing, or will be bypassing, required procedures must be taken as true. *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 950 (9th Cir. 2002); *Twede*, 309 F. Supp. 3d at 893.

But Plaintiffs, supported by declarations here, go much further—establishing that important procedures are in fact being bypassed and that environmental impacts are more than just probable. Plaintiffs identify well over 1,000 individual actions in Plaintiff States where the Corps has utilized, or plans to utilize, emergency procedures for non-emergency projects to implement the EO. Connor Decl. ¶ 18, Ex. D. In Washington alone this includes expedited reviews for pipelines, bank stabilizations, transmission lines, and fast-tracking permits for retrofitting the Electron Dam in Pierce County. *Id.*; Declaration of Loreé Randall ¶ 15.

The Corps has also approved numerous projects along the west coast that are situated in habitat critical for the survival of endangered species, but without required the protections under the Endangered Species Act. *See* Lee Decl. ¶¶ 30-37 (mapping Corps emergency projects over critical habitat along the west coast). For these actions, and countless other actions under the EO, the Corps has provided scant information to Plaintiffs, making it difficult to adequately assess potential impacts to natural resources and respond. Randall Decl. ¶¶ 5, 7. The Corps' compressed timeline also limits coordination with project applicants to "ensure project impacts are avoided, minimized, and properly mitigated" and "increases the risk of incomplete analysis." *Id.* ¶¶ 8, 10-11; *see also* Lee Decl. ¶¶ 20-29, 38, 43-52 (concluding the emergency procedures "short-circuit the standard permitting process in multiple ways … [b]ecause these procedures are being employed in sensitive ecosystems across the country, the risk of irreparable environmental degradation is very significant").

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO DISMISS -
NO. 2:25-CV-00869

12

Compressed timelines are harmful across-the-board but especially for projects with potentially significant impacts. For example, given the complexity of the Electron Dam project, Washington sought the full year provided by statute to conduct its Clean Water Act Section 401 certification. Randall Decl. ¶ 16; *see also* Lee Decl. ¶ 37 (describing risk of harm from this project). Citing the EO, the Corps so far has not approved the request, sticking Washington with half that time. Randall Decl. ¶¶ 16-17. And Defendants' claim, Dkt. #64 at 9, that the Corps will adhere to Section 401 timelines rings especially hollow given the undisputed fact that the Corps threatened states with demands to complete water quality certifications for EO projects within "days" rather than the *minimum* of six months provided by law. Complaint ¶ 128; Caiola Decl. ¶ 8. These are far from the only instances; there are hundreds of other examples within Plaintiff States where the Corps has deviated (or proposed deviating) from normal environmental review procedures that would apply absent the EO and the Corps' decision to rush projects through as "emergencies." Complaint ¶ 125; Dkt. #55-6; Connor Decl. ¶ 18, Ex. D; Lee Decl. ¶ 25-26.

Similarly, ACHP continues to direct federal agencies to bypass ordinary Section 106 consultation for hundreds of projects in Plaintiff States. The emergency procedure consultation notices sent by federal agencies to Plaintiffs' State Historic Preservation Officers generally lack information required under Section 106. *See* Polanco Decl. ¶ 11; Spong Decl. ¶ 16. Without adequate information, Plaintiffs are unable to determine whether a proposed project implicates historic and cultural resources and whether those resources may be adversely affected. *Id*. The Corps has also utilized ACHP's emergency procedures, including when it recategorized projects as "emergencies." *Supra* Section II.C. In doing so, ACHP resubmitted consultations to Plaintiffs, but failed to address prior comments and requests for information. Polanco Decl. ¶¶ 14-15. ACHP's decision to short-circuit the standard consultation process for hundreds of projects threatens or impedes Plaintiffs' participation in the statutory consultation process, credibly threatening irreparable damage to invaluable historic and cultural resources in Plaintiff States. *See id*. ¶ 17; Spong Decl. ¶ 19; Wood Decl. ¶ 5, Ex. A.

Interior's implementation of the EO also establishes procedural injury. For example, the Bureau of Ocean Energy Management, an agency within Interior, published a notice of intent to prepare an environmental impact statement on a proposal for offshore hydraulic fracturing at Platform Gilda in California that: identified minimal alternatives and a generic list of reasonably foreseeable impacts on marine resources and air quality; provided a comment period of just 12 days for the public to identify impacts, alternatives, and mitigation measures; and failed to include required notice of public meetings and the project scope information the public could submit. Aminzadeh Decl. ¶¶ 15-22. California submitted comments identifying—as best it could in the short timeframe provided—specific, reasonably foreseeable impacts from the proposed project, including oil spills, induced seismicity, and air emissions. *Id*. ¶¶ 23-37. Despite commenters urging the Bureau to conduct a comprehensive review of theses impacts, the agency released its environmental impact statement just 14 days after the comment period concluded. *Id*. ¶ 42. That statement acknowledges, but does not comprehensively analyze (much less attempt to avoid or mitigate), the harms California identified. *Id*. ¶¶ 43-51.

Interior also approved the Wildcat Loadout Facility via emergency procedures. The project is for oil transport via rail from Utah through the state of Colorado, likely impacting endangered species, water quality, and human health and safety in Colorado. Complaint ¶ 147; Declaration of Carrie Noteboom ¶ 3, Ex. A. Under its emergency procedures, Interior did not accept public comment on possible environmental impacts and—without the benefit of public comments—determined that impacts in Colorado were outside the scope of its analysis. *Id*. This was despite Colorado requesting an opportunity to provide public comment about "the project's reasonably foreseeable effects." *See id*. Had Interior accepted and responded to public comment, it may have reached a different conclusion on the appropriate scope of the project's impacts.

Finally, the risk of harm from treating non-emergency projects as emergencies should be evident. Expediting approvals substantially increases the likelihood that significant environmental impacts will be overlooked. Lee Decl. ¶ 25, 52. This is exactly why such

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO DISMISS -
NO. 2:25-CV-00869

14

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

procedures are reserved for *actual* emergencies—disasters, explosions, spills—where the risk of environmental harms is offset by the need for immediate action, *id.* ¶¶ 20-24, and why Defendants' regulations provide for use of these procedures only in such circumstances. That emergency procedures are being employed during a period of significant staff reductions only makes this outcome more likely. *Id.* ¶ 25. And, at this stage of the proceedings, the Court must accept as true both Plaintiffs' plausible allegation that Defendants are, via emergency procedures, circumventing environmental review *and* that doing so for thousands of "emergency" projects has resulted, and will continue to result, in adverse environmental harms to state-owned or -managed resources. *Twede*, 309 F. Supp. 3d at 893. Plaintiffs have more than established the minimal showing for procedural injury. *See Citizens for Better Forestry*, 341 F.3d at 970.

## 2.    Plaintiffs identify non-procedural harms

Defendants are incorrect, Dkt. #64 at 11, that Plaintiffs lack other proprietary injuries caused by Defendants. As noted above, Defendants have compressed timelines for the sake of expediting EO projects. Randall Decl. ¶ 14, Ex. A p. 6 (Corps' denying Washington's requested Section 401 certification timeline "[g]iven the project meets EO 14156"). This directly affects state regulators. The need to prioritize projects under the EO reduces efficiency and strains limited staff resources. Randall Decl. ¶¶ 6-12, 18. For example, with the Electron Dam project, Washington will need to expend additional staff time to meet the compressed Corps-imposed deadline for certification. *Id.* ¶¶ 15-17. These procedures also have caused confusion among both regulators and permittees, causing additional resource expenditures. *Id.* ¶¶ 7-11, 14. Regulators must expend limited staff time answering questions from permittees who have been shunted into emergency processes. *Id.* And even when Plaintiffs act as permittees, they must spend staff resources figuring out why their projects have been automatically deemed emergencies and how to opt-out of emergency procedures. Bartoy Decl. ¶¶ 5-8; *see also id.* ¶ 8 (Corps explaining

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO DISMISS -
NO. 2:25-CV-00869

15

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

"significant pressure to use the [EO] as much as possible"); Randall Decl. ¶ 14, Ex. A p. 13 (Corps stating projects are forced into the EO "with or without the applicant request to do so").

These are not self-inflicted harms. It is beyond dispute that Plaintiffs—in the performance of their statutory obligations—would not have to expend these additional resources but for Defendants' actions. Given that even "a dollar of economic harm is still an injury-in-fact for standing purposes," these harms also establish injury. *Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 5 (D.C. Cir. 2017).

### 3.    Defendants' arguments against injury fail

Defendants' arguments on injury are not persuasive. Defendants' reliance on *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009), is misplaced. The plaintiffs in *Summers* lacked standing because, following an injunction, the primary plaintiff on which standing was based settled his claims relating to the only application of the challenged policy that had been identified. *Id.* at 494. That is not the case here, where Plaintiffs have identified thousands of individual applications of the challenged procedures. Nor does *Summers* stand for the proposition that Plaintiffs lack standing to challenge the procedures themselves rather than specific projects. The Ninth Circuit has, in fact, repeatedly rejected that argument. *See, e.g., Cottonwood Env't. Law Ctr. v. U.S. Forest Serv.,* 789 F.3d 1075, 1079-81 (9th Cir. 2015) ("This is not the first time we have held that a plaintiff has standing to challenge programmatic management direction without also challenging an implementing project that will cause discrete injury.").

So, too, with Defendants' arguments against injury for Plaintiffs' Endangered Species Act claims. An actual "take" of a listed species is not required. *See Nat. Res. Defense Council v. Jewell*, 749 F.3d 776, 782-83 (9th Cir. 2014). And, while the Endangered Species Act does require "affirmative" agency action or authorization, *Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1021 (9th Cir. 2012) (en banc), the Ninth Circuit has consistently held "'agency action' is to be construed broadly." *Id. Karuk Tribe* clarifies that this is not limited to projects

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO DISMISS -
NO. 2:25-CV-00869

16

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

like building a road or a dam, confirming that *any* action marking the consummation of the legal process and from which legal consequences flow is an "action" for Endangered Species Act purposes. *Id*. at 1023. The Court expressly noted this includes overarching policy actions like "the creation of interim management strategies." *Id.* at 1021, citing *Lane Cnty. Audubon Soc'y v. Jamison*, 958 F.2d 290, 293-94 (9th Cir. 1992) (owl management plan actionable). The "actions" at issue in *Karuk Tribe* itself concerned notices to conduct mining activities without Endangered Species Act consultation, not individual mining decisions. *Karuk Tribe*, 681 F.3d. at 1014-16.

The decisions at issue in the above cases are precisely the type of injury-causing action alleged by Plaintiffs here. Defendants' contention that their affirmative decisions to authorize non-emergency projects throughout the country while conducting after-the-fact consultation is not an "action" for purposes of the Endangered Species Act strains credulity.

**B.     Plaintiffs' Claims Are Ripe**

Because Plaintiffs have standing, *supra* Section III.A, Defendants' reliance on their standing argument to assert that Plaintiffs' claims are not constitutionally ripe fails. Dkt. #64 at 20.

Defendants focus on prudential ripeness, a discretionary doctrine that "[t]he Supreme Court has stated … is 'in some tension' with 'the principle that a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging.'" *Planned Parenthood Great Nw. v. Labrador*, 122 F.4th 825, 840 (9th Cir. 2024) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014)). To apply this discretionary doctrine in administrative cases, courts consider "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented." *Env't. Def. Ctr.*, 36 F.4th at 870. Courts often combine the last two prongs and ask whether a claim is "fit for decision." *See Stavrianoudakis v. U.S. Fish & Wildlife Serv.*, 108 F.4th 1128, 1139 (9th Cir.

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO DISMISS  -
NO. 2:25-CV-00869

17

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

2024); *Pub. Lands for the People, Inc. v. U.S. Dep't of Agric.*, 733 F. Supp. 2d 1172, 1184 (E.D. Cal. 2010). If a case is fit for decision, a court need not consider hardship. *Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d 738, 753 (9th Cir. 2020).

"A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *Stavrianoudakis*, 108 F.4th at 1139. Plaintiffs' claims present legal issues: whether the EO is ultra vires and whether Agency Defendants' emergency procedures are contrary to law, arbitrary and capricious, and violate the Administrative Procedure and Endangered Species Acts. Defendants have each stated their final position on implementing the EO; no further factual development is required to adjudicate the lawfulness of those positions. Adjudicating Plaintiffs claim will not require review of administrative records for specific permits, biological opinions, or National Environmental Policy Act documents, *see* Dkt. #64 at 21, because Plaintiffs challenge the EO and implementing procedures themselves, not any project-specific action.

Likewise, Defendants' assertion that the procedures are "flexible" and "tailored to the particular action at hand," such that the agencies "should have the opportunity to refine their policies," Dkt. #64 at 21, is unavailing. The possibility that Defendants may later decide to revise their final decisions on EO implementation does not defeat ripeness. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009) (finding ripeness despite the possibility that "new rules may undergo some amendment or agency construction"). Further, Plaintiffs also allege procedural injuries from Defendants' systematic flouting of federal law, including established emergency procedures. *See supra* Section III.A. "For claims of procedural injury … the need for factual development ceases when the alleged procedural violation is complete." *Env't. Def. Ctr.*, 36 F.4th at 871.

Defendants' reliance on *Ohio Forestry* is unavailing. Dkt. #64 at 20. There, the Court found the challenged forest plan did not inflict harm on the interests the plaintiffs advanced—harm from cutting trees—because the plan did not "command anyone to do anything or to refrain

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO DISMISS -
NO. 2:25-CV-00869

18

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

from doing anything … [it did] not give anyone a legal right to cut trees, nor does it abolish anyone's legal authority to object to trees being cut." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998). In contrast, Plaintiffs here allege harm that flows directly from the EO and emergency procedures. *See Wilderness Soc'y v. Thomas*, 188 F.3d 1130, 1133 (9th Cir. 1999) ("ripeness doctrine would not bar a challenge to a forest plan if the plaintiff alleged a specific harm that would flow immediately from adoption of the plan").

Finally, even though the Court need not consider hardship, *see Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 959 F.3d 341, 355 (9th Cir. 2020), Plaintiffs have established harm from the EO and the procedures and would suffer hardship if adjudication were delayed because those harms multiply as Defendants continue to apply their emergency procedures. *See* Lee Decl. ¶¶ 25-51, 47.

## C.    Plaintiffs Challenge "Final Agency Action"

The Supreme Court has "'long applied a strong presumption favoring judicial review of administrative action.'" *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 23 (2018) (quoting *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 489 (2015)). To be final, agency action "must mark the consummation of the agency's decisionmaking process" and "be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–178 (1997) (citation modified). Courts interpret finality "in a pragmatic and flexible manner." *Saliba v. U.S. Sec. & Exch. Comm'n*, 47 F.4th 961, 967 (9th Cir. 2022). "In applying this test, [courts] look to factors such as whether the action amounts to a definitive statement of the agency's position, whether it has a direct and immediate effect on the day-to-day operations of the subject party, and if immediate compliance with the terms is expected." *Id.* (citation modified). Defendants have taken final agency actions to implement the President's EO and have illegally redefined the scope of their emergency regulations.

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS - NO. 2:25-CV-00869

19

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

**1.    Each agency's emergency procedures mark the consummation of its decision to implement the EO**

The challenged procedures are "definitive statement[s]" of the agencies' positions and complete their decisionmaking processes to implement the EO. *See Nat'l Labor Relations Bd. v. Siren Retail Corp.*, 99 F.4th 1118, 1123 (9th Cir. 2024). Each agency has taken a final position on how it will implement the EO. Indeed, Defendants point to no evidence suggesting they are "still in the middle of trying to figure out [their] position[s] on" implementation of the EO. *San Francisco Herring Ass'n v. Dep't of the Interior*, 946 F.3d 564, 578 (9th Cir. 2019).

Defendants' suggestion that Plaintiffs must challenge each project-level decision made pursuant to the procedures, Dkt. #64 at 14-19, misconstrues Plaintiffs' claims and lacks merit. Plaintiffs challenge the procedures, which direct systematic violations of federal law. Whether that direction is legal is appropriate for resolution under the APA. *San Francisco Herring*, 946 F.3d at 579 (final agency action requirement does not require that parties "keep knocking at the agency's door when the agency has already made its position clear").

Contrary to Defendants' arguments, Dkt. #64 at 16-17, the decision to use emergency procedures for preferred energy projects is not like a "manual." Instead, it illegally expands their existing regulatory definitions of "emergency" to include presidential energy policy. Thus, they are not merely "interpretive" policies because they both "add to" and "effect a change in" existing regulations. *See Gunderson v. Hood*, 268 F.3d 1149, 1154 (9th Cir. 2001). The lack of procedural formalities in doing so is of little import. *See, e.g., Kāpa'a v. Trump*, 794 F. Supp. 3d 793, 816 (D. Haw. 2025).[6] Likewise, Defendants' characterization of ACHP's actions as advisory, Dkt. #64 at 18, is not dispositive. "[C]ourts consider whether the practical effects of an agency's decision make it a final agency action, regardless of how it is labeled." *Columbia Riverkeeper v. U.S. Coast Guard*, 761 F.3d 1084, 1094-95 (9th Cir. 2014). ACHP's directive

_____

[6] Plaintiffs also allege that Defendants effectively amended their existing regulations governing the use of emergency procedures in violation of Section 553 of the APA. Complaint at ¶¶ 211, 239, 266.

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO DISMISS -
NO. 2:25-CV-00869

20

that its emergency procedures are available for preferred energy projects until the EO is rescinded is not mere advice. *See* Dkt. #55-11.

Defendants' procedures govern its implementation of the EO. Contrary to Defendants' assertions, any discretion the agencies have in how they apply their procedures, or whether they require interested parties to use them, does not render the directives any less final. *See Columbia Riverkeeper*, 761 F.3d at 1094-95.

### 2. Legal consequences flow from the emergency procedures

Defendants' decision to use emergency procedures changes the scope of what is an emergency under agency regulations and for how projects are evaluated, including the required statutory and regulatory procedures.

For example, standard procedures require completion of Endangered Species Act Section 7 consultation before approving a project. *See, e.g.,* 33 C.F.R. § 325.2(b)(5), § 330.4(f)(2). But Defendants' emergency procedures expand the applicability of the Endangered Species Act emergency regulation to include any preferred energy project. Because Defendants claim the EO constitutes an emergency, and the emergency regulation allows initiation of consultation to be delayed until after the emergency is completed, 50 C.F.R. § 402.05(b), consultation may be delayed until presidential policy changes—potentially years after the fact. And these procedures provide a "safe harbor" from enforcement for failure to initiate Section 7 consultation for preferred energy projects. *See Kāpaʻa*, 794 F. Supp. 3d at 819.

Defendants' procedures also systematically infringe on Plaintiffs' right to participate in agency decisionmaking for preferred energy projects. For example, Interior limits National Environmental Policy Act review to approximately 14-28 days and only allows for comments on a notice of intent to prepare an environmental impact statement—not on the substantive information in a draft statement or record of decision—during a truncated comment period of approximately ten days. *See, e.g.*, Complaint ¶¶ 145-146. ACHP procedures limit the comment period for state officials to seven days or fewer and do not involve the public at all. *Id.*

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS - NO. 2:25-CV-00869

21

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

¶¶ 149-150. By eliminating and shortening review periods for a broad category of actions in which Plaintiffs routinely participate, the procedures can and have required Plaintiffs to rearrange their operations to attempt to participate in these processes or research and mitigate the environmental effects that Defendants fail to consider on their own. *See Id.* ¶¶ 139, 189-191; *supra* Section III.A. The procedures thus have "a direct and immediate effect on the day-to-day operation[s]" of Plaintiffs. *Oregon Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) (citations modified).

### 3.     Plaintiffs challenge discrete agency actions, not broad agency programs

Defendants' contention that Plaintiffs' claims constitute an impermissible programmatic attack on agency "policies," "optional procedures" or "advice," Dkt. #64 at 15, is meritless.

"[C]ontinuing (and thus constantly changing) … operations" generally do not amount to a final agency action subject to judicial review under the APA. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 890-91 (1990). But Defendants' attempts to fit Plaintiffs' claims into the "programmatic attack" box mischaracterizes those claims. Plaintiffs do not challenge "the agencies' general performance of their respective statutory responsibilities … such as reviewing permit applications and engaging in ESA consultations." Dkt. #64 at 15. Nor do Plaintiffs ask the Court to evaluate agency operations or any agency program. Rather, Plaintiffs ask this Court to declare specific procedures unlawful, and to vacate and enjoin them. Complaint pp. 72-73. This case is, therefore, no different from a line of post-*Lujan* cases allowing challenges to substantive policy decisions even where follow-on decisions in individual permits are what may ultimately effectuate the injury. *See, e.g., Seattle Audubon Soc'y. v. Espy*, 998 F.2d 699, 703 (9th Cir. 1993) (allowing challenge to owl management plan although plan itself had no consequences until individual permits were approved).[7]

_____

[7] Critical here, *Seattle Audubon* involved the same claim of procedural injury asserted here: i.e., that "environmental consequences might be overlooked as a result of deficiencies in the government's analysis under environmental statutes." *Seattle Audubon*, 998 F.2d at 703.

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO DISMISS -
NO. 2:25-CV-00869

22

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

**D.    Dismissal of Plaintiffs' Ultra Vires Claim Against the President is Unwarranted**

Defendants' arguments to dismiss the ultra vires claim against the President fail.

First, Defendants' proposed standard is inapplicable. Defendants assert that ultra vires review is available "only when an agency has taken action entirely in excess of its delegated powers and contrary to a *specific prohibition* in a statute." Dkt. #64 at 22 (quoting *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 681 (2025) (*NRC*)). But *NRC* is inapplicable on its face because it concerned "post-APA" ultra vires review of agency action, a context in which "alternative path[s] to judicial review" are available. *Id.* at 681-82. Here, by contrast, Plaintiffs challenge the President's conduct, which is not subject to APA review.[8]

Moreover, *NRC* merely reaffirmed the high bar for relief on non-constitutional ultra vires claims where Congress has expressly limited judicial review. *See e.g., id.* at 681-83; *Leedom v. Kyne*, 358 U.S. 184 (1958); *see also Washington v. Trump*, 814 F. Supp. 3d 1173, 1210-11 (W.D. Wash. 2026) (concluding *NRC* did not deny review because plaintiffs asserted an equitable cause of action but, rather, because plaintiffs "attempted to dress up a typical statutory authority argument as an ultra vires claim" and "had a guaranteed alternative path to judicial review"). That high bar does not apply every time a plaintiff invokes equity to challenge a government official's actions. *Washington*, 814 F. Supp. 3d at 1210-11. Where Congress has not expressly limited judicial review, the courts analyze whether the challenged conduct was authorized by law. *See, e.g., Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 109-10 (1902). Here, there is a clear disconnect between the President's actions and the law. The NEA authorizes the use only of "powers or authorities made available by statute for use in the event of an emergency," 50 U.S.C § 1631, but the EO does not set out an emergency described in any

---

[8] If APA review is available against Agency Defendants, common law ultra vires would be precluded. But Defendants assert no APA claim exists. If this Court agrees, Plaintiffs' common law ultra vires claims against the agencies should remain.

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO DISMISS -
NO. 2:25-CV-00869

23

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

statute that the President cites.[9] *See* Complaint ¶¶ 65-90. Notably, the Supreme Court looks to the plain language of the statute and the traditional tools of statutory interpretation to decide whether the challenged action was permissible. *Dames & Moore v. Regan*, 453 U.S. 654, 674 (1981).

Second, the EO's savings clause cannot shield it from review or salvage its illegality. EOs "'cannot be held to destroy [themselves]' through saving clauses." *FTC v. Credit Bureau Ctr., LLC*, 937 F.3d 764, 775 (7th Cir. 2019) (quoting *Tex. & Pac. Ry. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 446 (1907)). And for good reason: "[i]f 'consistent with law' precludes a court from examining whether the Executive Order is consistent with law, judicial review is a meaningless exercise, precluding resolution of the critical legal issues." *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1240 (9th Cir. 2018). In other words, telling the Agency Defendants to simultaneously break and comply with the law does not prevent judicial review. Agency Defendants implemented the unlawful directives notwithstanding the savings clause. *See* Complaint ¶¶ 123-52; *supra* Section III.A. If the President lacks authority to issue the EO, it necessarily "command[s] … action that a savings clause purports to negate" and the "reviewing court must ignore the saving clause and read the order's operative provision to mean what it says." *League of United Latin Am. Citizens v. Exec. Office of the President*, 780 F. Supp. 3d 135, 176 (D.D.C. 2025); *see also id.* n.27 (collecting cases).

---

[9] Even if this Court found the NEA somehow limits judicial review, *NRC* recognizes that review is available over "an attempted exercise of [executive] power that had been specifically withheld" by Congress. *NRC*, 605 U.S. at 681 (citation modified). That is the case here. The NEA specifically withheld presidential authority to invoke emergency powers not "made available by statute for use in the event of an emergency." 50 U.S.C. § 1631. Here, the President directed the Agency Defendants to use "emergency powers" that Congress did not authorize. Even assuming the President can direct the use of regulatory emergency powers, the President cannot direct their use to "facilitate the Nation's energy supply," 90 Fed. Reg. 8433, 8434, which contradicts the regulatory text.

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO DISMISS  -
NO. 2:25-CV-00869

24

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

Third, this Court has inherent equitable power to adjudicate Plaintiffs' claim and enjoin agencies from implementing the unlawful EO. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015) (recognizing "a long history of judicial review of illegal executive action" through equitable claims). Presidential power "must stem either from an act of Congress or from the Constitution itself." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952). Where, as here, the President's "powers are limited by statute," his "actions beyond those limitations… are ultra vires his authority and therefore may be made the object of specific relief." *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949); *see also, e.g., Learning Resources, Inc. v. Trump*, 146 S. Ct. 628 (2026). Sovereign immunity does not bar suit against the President for the same reason—where, as here, the President "allegedly acted in excess of his legal authority … there is no sovereign immunity to waive—it never attached in the first place." *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1329 (D.C. Cir. 1996); *see also Murphy Co. v. Biden*, 65 F.4th 1122, 1129-30 (9th Cir. 2023). And, contrary to Defendants' suggestion, Dkt. #64 at 23, Plaintiffs plausibly allege the President acted ultra vires in his inherently *presidential* authority; Plaintiffs make no attempt to extend a cause of action available against other government officials.

Finally, the Court should reject any attempt to reframe Plaintiffs' claims as unreviewable political questions. Dkt. #64 at 22, n.7. The "energy emergency" lacks any factual basis. *See* Complaint ¶¶ 93-115. But that issue need not be before the Court because the EO is not a lawful exercise of authority. *See, e.g.*, Complaint at ¶¶ 196-98. "Deciding whether a discretionary choice in the realm of foreign policy or national security was wise is generally off limits. Deciding whether the government had legal authority to act is typically not."[10] *Vassiliades v. Rubio*, 792 F. Supp. 3d 1, 12 (D.D.C. 2025) (citation modified); *see also Learning Resources*, 146 S. Ct. at 641 (same).

---

[10] For this same reason, the Court should reject amici states' arguments. Dkt. #74-1.

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS - NO. 2:25-CV-00869

25

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

**E.    Any Dismissal for Lack of Subject Matter Jurisdiction Should Be Without Prejudice**

Defendants fail to establish that this Court lacks subject matter jurisdiction based on standing, final agency action, or ripeness. If the Court disagrees, any dismissal of Plaintiffs' claims for lack of subject matter jurisdiction should be without prejudice and with leave to amend. *See, e.g., Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988) (dismissals for lack of subject matter jurisdiction should be without prejudice). Because dismissals for lack of standing are, by definition, for lack of subject matter jurisdiction, they are to be without prejudice. *Id.*; *Fleck & Assoc., Inc. v. City of Phoenix*, 471 F.3d 1100, 1102 (9th Cir. 2006). So too with ripeness, *see, e.g., Canatella v. California*, 404 F.3d 1106, 1113 (9th Cir. 2005), and final agency action. *San Francisco Herring*, 946 F.3d at 571.

## IV.    CONCLUSION

Plaintiffs respectfully request the Court deny Defendants' motion to dismiss.

DATED this 6th day of May, 2026.

NICHOLAS W. BROWN
Attorney General of Washington

*/s/ Kelly T. Wood*
*/s/ Janell Middleton*
*/s/ Megan Sallomi*
*/s/ Dylan Stonecipher*
*/s/ Caitlin Soden*
KELLY T. WOOD, WSBA #40067
Senior Counsel
JANELL MIDDLETON, WSBA # 52666
DYLAN STONECIPHER, WSBA # 58245
Assistant Attorneys General
Ecology Division
1125 Washington St. SE
Olympia, Washington 98504
360-586-6770
kelly.wood@atg.wa.gov
Janell.middleton@atg.wa.gov
Dylan.stonecipher@atg.wa.gov

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO DISMISS  -
NO. 2:25-CV-00869

26

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

MEGAN SALLOMI, WSBA # 58016
CAITLIN SODEN, WSBA # 55457
Assistant Attorney General
Environmental Protection Division
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104
206-464-7744
megan.sallomi@atg.wa.gov
caitlin.soden@atg.wa.gov

*Attorneys for the State of Washington*

ROB BONTA
Attorney General of California

s/ *Robert D. Swanson*
s/ *Catherine M. Wieman*
s/ *Keari A. Platt*
s/ *Thomas Schumann*
ROBERT D. SWANSON*
Supervising Deputy Attorney General
CATHERINE M. WIEMAN*
KEARI A. PLATT*
THOMAS SCHUMANN*
Deputy Attorneys General
California Office of the Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
213-269-6329
robert.swanson@doj.ca.gov

*Attorneys for the State of California*

KRISTIN K. MAYES
Attorney General of Arizona

/s/ *Kirsten Engel*
KIRSTEN ENGEL*
Office of the Attorney General
2005 North Central Avenue
Phoenix, AZ 85004
Telephone: 520-209-4020
Kirsten.Engel@azag.gov

*Attorneys for the State of Arizona*

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO DISMISS -
NO. 2:25-CV-00869

27

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

PHILIP J. WEISER
Attorney General of Colorado

*/s/ Carrie Noteboom*
CARRIE NOTEBOOM*
Assistant Deputy Attorney General
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203
720-508-6000
carrie.noteboom@coag.gov

*Attorneys for the State of Colorado*

WILLIAM TONG
Attorney General of Connecticut

*/s/ Jill Lacedonia*
JILL LACEDONIA*
Assistant Attorney General
165 Capitol Avenue
Hartford, CT 06106
860-808-5250
Jill.Lacedonia@ct.gov

*Attorneys for the State of Connecticut*

KWAME RAOUL
Attorney General of Illinois

*/s/ Jason E. James*
JASON E. JAMES*
Assistant Attorney General
Office of the Attorney General
Environmental Bureau
201 W. Pointe Drive, Suite 7
Belleville, IL 62226
Phone: 217-843-0322
jason.james@ilag.gov

*Attorneys for the State of Illinois*

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO DISMISS -
NO. 2:25-CV-00869

28

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

AARON M. FREY
Attorney General of Maine

*/s/ Jack Dafoe*
JACK DAFOE*
Assistant Attorney General
Natural Resources Division
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333
207-626-8868
jack.dafoe@maine.gov

*Attorneys for the State of Maine*


ANTHONY G. BROWN
Attorney General of Maryland

*/s/ Steven J. Goldstein*
STEVEN J. GOLDSTEIN*
Assistant Attorney General
Office of the Attorney General of Maryland
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202
410-576-6414
sgoldstein@oag.state.md.us

*Attorneys for the State of Maryland*


ANDREA JOY CAMPBELL
Attorney General of Massachusetts

*/s/ Zeus H. Smith*
ZEUS H. SMITH*
Assistant Attorney General
Environmental Protection Division
Office of the Attorney General
One Ashburn Place
Boston, MA 02108
(617) 963-2294
Zeus.smith@mass.gov


*Attorneys for the Commonwealth of Massachusetts*

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO DISMISS -
NO. 2:25-CV-00869

29

DANA NESSEL
Attorney General of Michigan

*/s/ Benjamin C. Houston*
*s/ Hadley Tuthill*
BENJAMIN C. HOUSTON*
HADLEY TUTHILL*
Assistant Attorney General
Environment, Natural Resources, and Agriculture
Division
6th Floor G. Menne Williams Building
525 W. Ottawa Street, PO Box 30755
Lansing, Michigan 48909
(517) 335-7664
HoustonB1@michigan.gov

*Attorneys for the People of the*
*State of Michigan*

KEITH ELLISON
Attorney General of Minnesota

*/s/ Alyssa Bixby-Lawson*
ALYSSA BIXBY-LAWSON*
Assistant Attorney General
445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2131
(651) 300-0904 (Voice)
(651) 297-4139 (Fax)
Alyssa.bixby-lawson@ag.state.mn.us

*Attorneys for the State of Minnesota*

FOR THE STATE OF NEW JERSEY
JENNIFER DAVENPORT
Attorney General of New Jersey

*/s/ Nell Hryshko*
Nell Hryshko*
Deputy Attorney General
Division of Law
25 Market St., P.O. Box 093
Trenton, NJ 08625
Telephone: (609) 376-2735
Email: nell.hryshko@law.njoag.gov

*Attorneys for the State of New Jersey*

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO DISMISS  -
NO. 2:25-CV-00869

30

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

FOR THE STATE OF NEW MEXICO
RAUL TORREZ
Attorney General


 /s/ Esther Jamison
Esther Jamison*
Assistant Attorney General
408 Galisteo Street
Santa Fe, New Mexico 87501
Tel. (505) 627-3474
EJamison@nmdoj.gov

*Attorneys for the State of New Mexico*


DAN RAYFIELD
Attorney General of Oregon


/s/ Diane Lloyd
DIANE LLOYD*
Assistant Attorney-in-Charge
Natural Resources Section
Oregon Department of Justice
1162 Court Street NE
Salem, Oregon 97301-4096
(503) 947-4540
Diane.Lloyd@doj.oregon.gov

*Attorneys for the State of Oregon*


PETER F. NERONHA
Attorney General of Rhode Island


 /s/ Alison H. Carney
/s/ Nicholas M. Vaz
ALISON H. CARNEY*
NICHOLAS M. VAZ*
Special Assistant Attorneys General
Office of the Attorney General
Environmental and Energy Unit
150 South Main Street
Providence, Rhode Island 02903
(401) 274-4400 exts. 2116/2297
acarney@riag.ri.gov
nvaz@riag.ri.gov

*Attorneys for the State of Rhode Island*

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO DISMISS  -
NO. 2:25-CV-00869

31

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

CHARITY R. CLARK
Attorney General of Vermont

*/s/Laura B. Murphy*
LAURA B. MURPHY*
Assistant Attorney General
Vermont Attorney General's Office
109 State Street
Montpelier, VT 05609
(802) 828-1059
laura.murphy@vermont.gov

*Attorneys for the State of Vermont*

JOSHUA L. KAUL
Attorney General of Wisconsin

*/s/ Gabe Johnson-Karp*
GABE JOHNSON-KARP*
*Assistant Attorney General*
Wisconsin Department of Justice
17 West Main Street
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 267-8904
gabe.johnson-karp@wisdoj.gov
*Attorneys for the State of Wisconsin*

* Admitted *pro hac vice*

**CERTIFICATE OF COMPLIANCE**

I certify that this memorandum contains 8,398 words, in compliance with Local Civil Rule 7(e)(4).

*/s/ Kelly T. Wood*
Kelly T. Wood

PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO DISMISS -
NO. 2:25-CV-00869

32

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770