# EXHIBIT B



**DEPARTMENT OF THE ARMY**
**U.S. ARMY CORPS OF ENGINEERS**
**USACE MISSION SUPPORT BATTALION**
**7701 TELEGRAPH ROAD**
**ALEXANDRIA, VIRGINIA 22315-3860**

February 9, 2026

Office of Counsel

SUBJECT: Freedom of Information Act Request No. FP-25-011249,
Civil Action No. 25-cv-01306, D.D.C.

Via Email: hconnor@biologicaldiversity.org; brankin@biologicaldiversity.org

Ms. Ann Brown
c/o Ms. Hannah Connor and Benjamin Rankin
Center for Biological Diversity
1411 K Street NW, Suite 1300
Washington, DC 20005

Dear Ms. Brown:

On February 2, 2026, the U.S. Army Corps of Engineers' (USACE's) transmitted documents to you as its first interim response to your March 4, 2025, Freedom of Information Act (FOIA) request and the associated lawsuit pending in the District of Columbia under Civil Action No. 25-cv-01306. This letter is written to discuss the documents and USACE's first interim response. USACE initiated its search on April 7, 2025.

Your request sought, from January 20, 2025, to the date of the search (April 7, 2025), records for active permit applications under section 404 of the Clean Water Act or Section 10 of the Rivers and Harbors Act documenting the consideration, reclassification or approval of such permit pursuant to Executive Order 14156, Declaring a National Energy Emergency and requests for emergency consultation or approval under Section 7 of the Endangered Species Act sent to the U.S. Fish and Wildlife Service or National Marine Fisheries Service.

Additionally, the request asked for records documenting the display of information on the public-facing ORM page for active permit applications with respect to their classification under Executive Order 14156, Declaring a National Energy Emergency for the period of February 15, 2025, to the date of the search (April 7, 2025).

A search of the records of USACE Headquarters Regulatory staff assigned to work on EO 14156 was made on April 7, 2025, and 109 documents responsive to the requests were located. Of those 109 documents, I have determined that three documents may be released in full, 24 documents must be withheld in full under FOIA Exemption 5 (deliberative process privilege, attorney client privilege, and/or attorney work product privilege) and/or FOIA Exemption 6, and 85 documents may be released with portions redacted under FOIA Exemption 5 (deliberative process privilege, attorney

-2-

client privilege, and/or attorney work product privilege) and/or FOIA Exemption 6. FOIA Exemption notations are included in file names and on redaction markings within the documents.

All files were reviewed line by line and any segregable information was released. Additionally, USACE considered the foreseeable harm in releasing documents (or portions of documents) before applying the appropriate FOIA exemption.

We would like to discuss the portion of your request seeking records for active permit applications documenting the consideration, reclassification, or approval of such permits, and for requests for emergency consultation under ESA under Executive Order 14156. To facilitate the discussion, USACE included four spreadsheets and an informational pdf in the documents transmitted on February 3, 2026. The four spreadsheets were compiled on January 28, 2026, and show pending and completed permitting actions flagged as qualifying as Energy Emergency projects under the EO from January 20, 2025, to January 28, 2026. Two of the spreadsheets also include actions which have a subaction for Endangered Species Act and/or Essential Fish Habitat. These are included in order to assist in potentially narrowing this request, or directing follow up requests to the districts where the actions are/were processed.

**Exemption 5**

Exemption 5 of the FOIA, 5 U.S.C. § 552(b)(5), protects inter- or intra-agency memorandums or letters that would not be available by law to a party in litigation with the agency. USACE relied upon three privileges to withhold documents or portions of documents in this release. Specifically, USACE relied upon Deliberative Process Privilege (DPP), Attorney-Client Privilege (ACP), and Attorney Work Product (AWP).

The threshold consideration under Exemption 5 is whether the material to be protected is inter-agency or intra-agency memorandums. The Supreme Court has stated that the term "agency" means "each authority of the Government . . . and includes any executive department . . . . *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 2 (2001) (internal citations omitted). In this case, the material to be protected is contained in emails between two or more USACE or Army employees. Accordingly, the threshold consideration is met.

Deliberative Process Privilege: Agencies may withhold material that is pre-decisional and deliberative in nature under Exemption 5. *See Coastal States Gas Corp. v. DOE*, 617 F.2d 854, 867-868 (D.C. Cir. 1980). A communication is deliberative if it is a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters. *See Vaughn v. Rosen*, 523 F.2d 1136, 1143-1144 (D.C. Cir.

-3-

1975). Factual information may also be protected when it is selectively included to assist in decision-making. *See Hiken v. Dep't of Def.*, 521 F. Supp. 2d 1047, 1063-1064 (N.D. Cal. 2007). Specifically, the privilege encourages open, frank discussions on matters of law and policy, and protects against premature disclosure of proposed policies. *See Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982).

The material withheld embodies the purpose for the Deliberative Process Privilege which exists to encourage open and frank discussions between government agencies and officials and to protect against premature disclosure of proposed policy. In the redacted material, USACE staff discuss whether changes in the law affect the agency's review of a specific project and which path forward is best. I have concluded that the release of pre-decisional discussions between USACE staff members would produce a chilling effect on the Agency's regular practice of communicating openly in gathering information, and fully analyzing factors relevant to developing the Agency's position and policy. *Kidd v. U.S. Dep't of Justice*, 362 F. Supp. 2d 291, 296 (D.D.C. 2005) (protecting documents on basis that disclosure would "inhibit drafters from freely exchanging ideas, language choice, and comments in drafting documents").

The agency considered the foreseeable harm resulting from the release of these deliberative materials and determined that release would inhibit the candid exchange of ideas among agency personnel, leading to a "chilling effect" on future deliberations and harming the quality of agency decision-making.

Attorney-Client Privilege: Attorney-client privilege protects from release "confidential communication between an attorney and his/her client relating to a legal matter for which the client has sought professional advice." *Mead Data Cent. Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977). It serves to protect confidential information supplied from client to attorney, as well as the attorney's advice based upon client supplied information. The purpose of the privilege is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interest in the observance of the law and administration of justice and is not limited to situations involving litigation.

The agency considered the foreseeable harm in releasing these attorney-client communications and determined release would undermine the attorney-client relationship by discouraging staff from seeking necessary legal guidance which would negatively affect legal advocacy and agency actions.

Attorney Work Product Privilege: The Attorney Work Product Privilege is designed to protect the integrity of the adversarial process. The information withheld in this case consists of documents prepared by agency attorneys and consists of analysis, opinions,

-4-

and strategic planning prepared in reasonable anticipation of litigation concerning the implementation of Executive Order 14156, Declaring a National Energy Emergency, as well as the agency's regulatory permitting processes.

The agency considered the foreseeable harm in releasing attorney work product and determined that releasing the information would reveal the attorneys' thought processes, legal strategies, and mental impressions, which would undermine the agency's position in potential or ongoing legal proceedings.

In consideration of the foregoing, the application of Exemption 5 is appropriate.

### Exemption 6

Exemption 6 of the FOIA, 5 U.S.C. §552(b)(6). Exemption 6 protects information which, if disclosed, would constitute a clearly unwarranted invasion of personal privacy. This exemption applies broadly to the "disclosure of information which applies to a particular individual." *U.S. Dept. of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982).

Exemption 6 applies to both private citizens as well as DOD employees. "One who serves his state or nation as a career public servant is not thereby stripped of every vestige of personal privacy, even with respect to the discharge of his official duties." Keys v. DHS, 570 F. Supp. 2d 59, 68 (D.D.C. 2008). Furthermore, courts have supported the withholding of information regarding Department of War (formerly Defense) employees. *Center for Public Integrity v. U.S. Office of Pers. Mgmt.*, Slip Copy, 2006 WL 3498089 (D.D.C.); *Deichman v. U.S.*, No. 05-680, 2006 WL 3000448 (E.D. Va. Oct. 20, 2006).

In this case, USACE redacted identifying information for lower-level government employees and their contact information. Releasing this information would harm the privacy interest of those employees without providing any additional relevant information to the public and therefore release would cause foreseeable harm and be a clearly unwarranted invasion of personal privacy.

The privacy interest protection provided by Exemption 6 is not absolute. The privacy interest may, in some cases, be outweighed if release of the information would "open agency action to the light of public scrutiny" by "shed[ding] light on an agency's performance of its statutory duties" – in other words, if it would help to keep the citizenry informed of "what their government is up to." *U.S. Dept. of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 772-73 (1989). The balance must be made in light of the privacy interests protected by Exemption 6 and the overall purpose of the FOIA,

-5-

which is to "contribute significantly to public understanding of the operations or activities of the government." *Id*. at 775. Given that privacy is construed broadly as "encompass[ing] the individual's control of information concerning his or her person," *Id*. at 763, that privacy interest is outweighed, and disclosure mandated, only if the information sought directly concerns the functioning of a government agency. While the documents shed light on the activities of the Government, no similar end is served by releasing personal information of lower-level Department of War employees. "[U]nless the public would learn something directly about the workings of the Government by knowing the names" of employees, "their disclosure is not affected with the public interest." *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989). Because "something, even a modest privacy interest, outweighs nothing every time," *id*., the personal information is exempt from disclosure under § 552(b)(6).

The agency considered the foreseeable harm in releasing personal information of lower-level Department of War employees and determined the release of this information would permit an unwarranted invasion of personal privacy which would lead to unsolicited contact and harassment of agency employees in their personal and professional lives. Accordingly, the information is appropriately protected from release under FOIA Exemption 6. The agency chose to release the names of high-level officials and official agency spokespersons due to their frequent interaction with the public.

I apologize for the delay in responding to your request and look forward to working with you to narrow the remaining portion of the request so it may be processed efficiently. If you have any questions about the first interim response, please contact Mr. Brian Tracy, Special Assistant United States Attorney for the District of Columbia.

Sincerely,

GREEN.EMILY.ELIZ
ABETH.1143123355

Digitally signed by
GREEN.EMILY.ELIZABETH.1143
123355
Date: 2026.02.09 16:46:44 -05'00'

Emily Green
UMSB Counsel

Enclosures previously transmitted by DoD SAFE