The Honorable Jamal Whitehead

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

STATE OF WASHINGTON, STATE OF CALIFORNIA, et al,

Plaintiffs,

v.

DONALD TRUMP, et al,

Defendants.

NO.  2:25-cv-00869

DECLARATION OF CALIFORNIA STATE HISTORIC PRESERVATION OFFICER, JULIANNE POLANCO, IN SUPPORT OF PLAINTIFFS' RESPONSE TO MOTION TO DISMISS

I, JULIANNE POLANCO, declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct:

1.     I am a resident of the State of California. I am over the age of 18 and have personal knowledge of all the facts stated herein, except to those matters stated upon information and belief; as to those matters, I believe them to be true. If called as a witness, I could and would competently testify to the matters set forth below.

2.     I am currently employed by the California Office of Historic Preservation (OHP) as the State Preservation Officer (SHPO).

DECLARATION OF JULIANNE POLANCO ISO PLAINTIFFS' RESPONSE TO MOTION TO DISMISS-- NO.  2:25-CV-00869

1

3.    I was appointed as the SHPO by Governor Brown on June 12, 2015, and my tenure as the SHPO was extended when I was reappointed by Governor Newsom on March 23, 2023.

4.    As the SHPO, I am responsible for the operation and management of the OHP and California's historic preservation program. It is within my duties to consult with federal agencies on proposed federal undertakings (projects), projects either using federal funds or requiring a federal permit, regarding the potential to affect historic properties and Tribal cultural resources, and to assess efforts to avoid, minimize, or mitigate harm to those properties. I also consult with Tribal governments and Tribal Historic Preservation Officers (THPOs) on historic preservation matters affecting Tribal land and cultural resources. My knowledge of consultations received by the OHP pursuant to Executive Order 14156, Declaring a National Energy Emergency," (Executive Order) is based upon my personal knowledge and my review of the consultations and communications received by my office.

5.    The OHP is responsible for administering federally and state mandated historic preservation programs to further the identification, evaluation, registration and protection of California's archaeological and historic resources. As home to 109 federally recognized tribes and 81 groups that are currently seeking federal recognition, the State's historical resources represent the contributions and experiences of a diverse population spanning 10,000-12,000 years of occupancy in California. California's historic resources include archaeological remains, historic buildings, traditional customs, tangible artifacts, historical documents, and public records. The legislature has found that the State's archaeological resources "need to be preserved in order to illuminate and increase public knowledge concerning the historic and prehistoric past of California," and requires all state agencies to preserve and maintain all "state-owned historical resources under its jurisdiction listed in or potentially eligible for inclusion in the National Register of Historic Places or registered or eligible for registration as

DECLARATION OF JULIANNE
POLANCO ISO PLAINTIFFS'
RESPONSE TO MOTION TO DISMISS--
NO.  2:25-CV-00869

2

a state historical landmark pursuant to Section 5021." Cal. Pub. Res. Code §§ 5079.60, 5024 (a) (West 2026).

6.      To promote preservation of historic resources, the OHP reviews proposals for federally assisted projects pursuant to Sections 106 and 110 of the National Historic Preservation Act (NHPA) to ensure they comply with federal historic preservation laws and are planned in ways that avoid, minimize, and/or mitigate any adverse effects. The OHP does this by reviewing information received from federal agencies, Tribes, and interested parties to identify whether cultural resources are present at the site of a proposed project and whether those resources may be affected. If adverse effects cannot be avoided, the OHP advises the federal agency on methods to minimize or mitigate such effects. The OHP processes approximately 5,000 consultations for state-funded projects (pursuant to Sections 5024 and 5024.5 of the California Public Resources Code) and federally assisted projects (pursuant to Sections 106 and 110 of the NHPA) annually.

7.      Pursuant to Section 106, federal agencies (and their designees, permittees, licensees, or grantees) are required to consider the effects of proposed federal projects on historic properties and to initiate consultation with the OHP (Section 106 consultation). 36 C.F.R. § 800.1. To assist consultation, federal agencies are required to make a "reasonable and good faith effort" to identify historic properties. *Id.* § 800.4(b)(1). Consultations submitted to the OHP must identify the Area of Potential Effects (APE) by providing a detailed project description, including the purpose, acreage, location, anticipated activities, and the anticipated project schedule. *Id.* §§ 800.4(a), 800.11(a), 800.11(d), 800.11(e). A submission should include detailed maps, information regarding environmental review, a narrative APE description, information regarding ground-disturbing activities, and documentation demonstrating the agency's reasonable and good faith effort to identify cultural resources. *Id.* §§ 800.4, 800.4(b)(1), 800.11(d), 800.11(e). Finally, the consultation must also describe efforts to identify Native American resources and to consult with Native American Tribes who hold

special expertise in identifying and assessing the eligibility of properties that may possess religious and cultural significance to them; Tribal consultation should be conducted prior to initiating the Section 106 process with the OHP. *Id.* § 800.4(a)(4).

8.     Typically, once the OHP receives from a federal agency information sufficient to understand the proposed project, historic resources, and potential effects, OHP staff will review and respond within thirty days. If the OHP determines the agency failed to provide sufficient documentation, the OHP staff will contact the agency to request the necessary information, and the thirty-day review period resets. 36 C.F.R. 800.5(c). If a proposed project may have an adverse effect on any historic property, the federal agency must notify the federal Advisory Council on Historic Preservation (ACHP) and begin negotiations to create a plan to avoid, minimize, and/or mitigate any adverse effects. *Id.* §§ 800.4(d)(2), 800.5, 800.6(a). The plan to resolve adverse effects is memorialized between the federal agency, the SHPO, ACHP, and any Tribes or interested parties, in either a Memorandum of Agreement or a Programmatic Agreement. *Id.* § 800.6(c).

9.     On February 19, 2025, the OHP received an email with notice of ACHP's new policy, Exhibit A, that federal agencies should utilize Section 106's preexisting emergency procedures (or, if applicable, the terms of a Programmatic Agreement) to expedite any federal projects within the scope of the Executive Order. The Section 106 emergency procedures (hereafter, "ACHP's emergency procedures") are outlined in Section 800.12(b)(2) of the Section 106 regulations. Pursuant to Section 800.12(b), ACHP's emergency procedures apply "in the event an agency official proposes an emergency undertaking as an essential and immediate response to a disaster or emergency declared by the President, a tribal government, or the Governor of a State or another immediate threat to life or property . . ." The procedures are to be used in lieu of the standard Section 106 consultation procedures outlined at Sections 800.3 through 800.6, however federal agencies still must submit the required information, pursuant to Section 800.11. Federal agencies must notify ACHP, the SHPO/THPO, and

DECLARATION OF JULIANNE                         4
POLANCO ISO PLAINTIFFS'
RESPONSE TO MOTION TO DISMISS--
NO.  2:25-CV-00869

Tribe(s) potentially affected by a proposed project and provide for a seven-day comment period. *Id.* § 800.12(b)(2). ACHP's emergency procedures are intended only to apply to projects that will be "implemented within 30 days after the disaster or emergency has been formally declared," however the federal agency may request from ACHP an extension of the applicability of the procedures. *Id.* § 800.12(d). However, ACHP's notification extended the time period for use by stating: "While Section 800.12 only applies for 30 days following an emergency declaration, pursuant to Section 800.12(d), the ACHP is hereby extending the applicability of the Section 106 emergency provisions to run for the duration of the Presidential declaration." Exhibit A.

10. As of March 30, 2026, since ACHP announced applicability of ACHP's emergency procedures in response to the Executive Order, the OHP has received from the Army Corps (Corps) and other federal agencies consultations for fifty-two projects pursuant to the Executive Order. Exhibit B. The projects are wide-ranging, and include pole and electrical line replacements, pipeline repairs, gas station upgrades, and solar projects. *See id.*

11. The consultations received by the OHP from the federal agencies under the Executive Order generally do not contain the information required under Section 106. Most consultations lack a sufficient description of the proposed project, do not include sufficient supporting documentation, fail to identify other affected parties and/or Tribes, and do not include other Tribes' consultation comments. For the first few consultations received in March 2025, because ACHP's guidance was unclear and the Corps did not provide adequate information, the OHP staff did not know they needed to respond. The OHP staff now respond to every consultation within seven days, but, without sufficient documentation, the OHP is unable to provide substantive comments to meaningfully address potential effects of proposed projects. The federal agencies generally do not respond to comments and also do not provide the OHP with their consultation conclusion. Often, the ACHP informs the federal agency it did not meet the requirements for Section 106 consultation.

DECLARATION OF JULIANNE
POLANCO ISO PLAINTIFFS'
RESPONSE TO MOTION TO DISMISS--
NO. 2:25-CV-00869

12. For example, on March 12, 2025, the OHP received the Emigrant Street Deteriorated Pole Replacement project in Mono County as one of the first consultations submitted under the Executive Order. Exhibit B. The OHP received minimal information from the Corps, did not know it needed to provide a response, and thus did not comment within the seven-day comment period.

13. For the Operations and Maintenance Project on Tufa 16kV Distribution Line in Mono County, the OHP received from the Corps a consultation on August 5, 2025. *Id*. The OHP responded on August 8, 2025, that the Corps failed to adequately survey and identify potential resources, noting that one resource was not evaluated. The OHP requested additional documentation but received no response.

14. In at least one instance, the Corps resubmitted a consultation pursuant to the Executive Order after the OHP already received it as a regular Section 106 consultation and provided substantive comments. When the Corps resubmitted the consultation under the Executive Order, it failed to address the OHP's previous comments and did not provide the OHP with information necessary to identify historic resources and assess impacts.

15. For the SDG&E eTS 63586.01 TL674 Pole Replacement and Maintenance Pad Project in Rancho Santa Fe, the regular Section 106 consultation letter was received by the OHP on May 15, 2025. *Id.* The OHP responded with comments on May 21, 2025, and requested additional documentation. The OHP then received a second consultation from the Corps on June 3, 2025, wherein the Corps informed the OHP that it was only allowed seven days to respond under the Executive Order. *Id.* The Corps' second letter did not address any of the OHP's previous comments.

16. Since federal agencies provide only scant information during the consultation process, the OHP is not always able to analyze the accuracy of the APE associated with a project, whether historic and cultural resources are present, and whether those resources may be adversely affected. This is exacerbated by a brief and simultaneous notification to Tribes,

interested parties, and ACHP, such that meaningful consultation does not occur, and any potential comments from these parties are not considered—further potentially affecting historic and cultural resources. Many of these projects are in previously un-surveyed areas, exacerbating the lack of information to identify potential effects.

17.    Several of these projects have the potential to harm California's historic and cultural resources. For example, power line construction and replacement projects in California's deserts pose possible adverse effects to burial sites, archaeological sites, and large landscape resources, such as the traditional landscape. Tribes hold special knowledge about these sites; this information is often confidential such that documentation is not available in any public repository. Without prior consultation with Tribes to consider potential effects, and without information about the implementation of the project, the ability to assess any possible destruction is eliminated. Further, without obligation by the federal agency to report in-progress or post-completion activities, historic and cultural resources—including sacred and archaeological sites—may be sustaining irreparable harm, with no ability to monitor project implementation and to document and/or recover any artifacts, cultural, or funerary objects that may be discovered.

18.    If the federal agencies utilized the standard Section 106 consultation process, after submitting to the OHP all required consultation documentation, the OHP would work with the agency, Tribes and interested parties, to develop measures to avoid harm or to minimize impacts.

19.    Now, because of the federal agencies' use of ACHP's emergency procedures, adequate consultation is not being done to avoid or mitigate adverse effects to cultural resources.

DECLARATION OF JULIANNE
POLANCO ISO PLAINTIFFS'
RESPONSE TO MOTION TO DISMISS--
NO. 2:25-CV-00869

7

Executed on May 1, 2026 in MILL VALLEY, CALIFORNIA.

By: _____

JULIANNE POLANCO