The Honorable Jamal Whitehead

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STATE OF WASHINGTON, et al.,

                        Plaintiffs,

        v.

DONALD TRUMP, et al,

                        Defendants.

NO. 2:25-cv-00869

DECLARATION OF AMY
SPONG IN SUPPORT OF
PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO
DISMISS

1.      I am Minnesota's Deputy State Historic Preservation Officer and the Director of the State Historic Preservation Office ("SHPO").

2.      SHPO is a division of the Minnesota Department of Administration.  SHPO leads the state's historic preservation efforts in partnership with federal, Tribal, state, and local entities. *See* Minn. Stat. §§ 138.081, 138.661-.6691.  More information about SHPOs is available at https://ncshpo.org.

3.      The National Historic Preservation Act of 1966, as amended ("the Act") established SHPOs in every state, territory, and District of Columbia. Minnesota's SHPO is the State agency charged with fulfilling the State's obligations under the Act and related state laws. SHPOs identify and nominate properties to the National Register of Historic Places, conduct surveys and maintain ongoing inventories of historic, architectural, and archeological sites, oversee tax credit programs, and assist local governments with their historic preservation programs.

4.      SHPOs advise and assist federal and state agencies and local governments in carrying out their responsibilities under the Act. They cooperate with the Secretary of the

DECLARATION OF AMY SPONG           1
NO. 2:25-CV-00869

Interior, the Advisory Council on Historic Preservation ("ACHP"), and federal and state agencies to ensure historic properties are considered at all levels of planning and development. SHPOs also consult with federal agencies on undertakings that may affect historic properties and on the adequacy of plans developed to protect, manage, reduce, or mitigate harm to those properties.

5.      The Act charges federal agencies with responsible stewardship by considering the effects of their actions on historic properties. This includes providing a reasonable opportunity for comment on those actions and disclosing how historic properties are taken into account. This review process is referred to as "Section 106 review."  Section 106 review is required for projects that federal agencies carry out, assist, fund, license, or permit.

6.      There are four main components of a Section 106 review process which are: (1) initiating the process; (2) identifying historic properties; (3) assessing effects; and (4) resolving adverse effects (if determined).  A project can proceed if there are no historic properties affected, or if adverse effects to historic properties are avoided, or in the case of unavoidable adverse effects, an agreement has been executed to minimize and mitigate those effects.

7.      The ACHP is an independent federal agency that promulgates Section 106 regulations and carries out case reviews, provides training, and conducts outreach.

8.       Section 106 provides the ACHP, interested parties, and the public an opportunity to provide input on historic preservation matters before a final federal agency decision is made. Public participation is a critical component in protecting and maintaining historic properties in communities.

9.      I am aware that the President of the United States issued an executive order declaring an energy emergency ("Energy Emergency Order"), directing federal agencies to use

DECLARATION OF AMY SPONG          2
NO.  2:25-CV-00869

emergency authority to expedite energy-related projects. In response, the ACHP issued guidance to federal agencies on the application of Section 106 requirements under the Energy Emergency Order.

10. The ACHP has substantially extended the period during which emergency procedures apply. See https://www.achp.gov/Section_106_and_Energy_Emergency. Section 106 regulations allow emergency procedures in cases of disasters or emergencies, but limit their duration to 30 days after the disaster or emergency is declared. An agency may request an extension of this emergency period from the ACHP, but that request must be made prior to the expiration of the original 30-day period. I am not aware of the ACHP granting a long-running emergency declaration, particularly without any request for one from a federal agency.

11. Emergency provisions under Section 106 are understood to apply to emergent circumstances where compliance with the standard review process could delay urgent recovery and stabilization work in the aftermath of a disaster, including when historic properties have been harmed. For example, after a flood event, a federal agency may need to stabilize dams, construct temporary dikes, or other temporary measures to protect impacted resources. The emergency provisions have been historically used in these types of situations where the time required to complete a standard Section 106 review could impede efforts to protect public health and safety.

12. There are alternative and established tools available to federal agencies when a different approach is needed while still meeting the requirements of Section 106, primarily through the use of agreements between federal agencies and SHPOs. These agreements-- developed between a federal agency (like FEMA and FHWA), a SHPO, Tribes, and other

DECLARATION OF AMY SPONG                3
NO. 2:25-CV-00869

consulting parties--streamline reviews for a group of undertakings or an entire program. These agreements generally have provisions for emergency situations while still ensuring Section 106 compliance, sometimes after the emergency work occurs. There are established templates and many examples of successful programmatic agreements that streamline review of undertakings. Attached as Exhibit A is an example of an agreement between SHPO and FEMA, an agency tasked with handling disaster recovery, which is based on a prototype agreement developed by the ACHP and available here: https://www.achp.gov/digital-library-section-106-landing/fema-prototype-programmatic-agreement.

13.     Since the adoption of the Energy Emergency Order and related ACHP emergency procedures, we have observed changes in the way federal agencies approach Section 106 for energy-related undertakings.

14.     Under these emergency procedures, SHPOs comment period on projects has been reduced from 30 to 7 days. Since the initial Energy Emergency Order was issued through March 2026, our office has received 70 notices to comment on within 7 days, versus the normal 30 days. We continue to receive expedited notices under the Energy Emergency Order.

15.     Although SHPO has provided comments on these undertakings, under the emergency procedures, federal agencies only need to *notify* the ACHP and SHPO of historic properties likely to be affected and provide an opportunity to comment within seven days. Agencies are not required to follow SHPOs recommendations or carry out the standard Section 106 steps of initiating consultation, identifying historic properties, determining effects, and resolving adverse effects. They are also not required to invite consulting parties or notify the public.

DECLARATION OF AMY SPONG                    4
NO. 2:25-CV-00869

16. Federal agencies are obligated to identify historic properties and determine potential effects under Section 106, including evaluating properties for National Register of Historic Places eligibility. The SHPO will respond by either concurring or not concurring on the agency's adequacy of their identification efforts which informs an agency's assessment of effects. Under the Energy Emergency Order, agencies may or may not conduct adequate identification and therefore have no way of knowing whether the undertaking will affect historic properties. This is especially true for undertakings involving ground disturbance where unidentified archaeological resources may be present. Moreover, in cases where SHPO has concerns, under the emergency procedures there is no requirement for the federal agency to consider those concerns or continue consultation to resolve them.

17. The ACHP provides the National Conference of State Historic Preservation Officers a list of emergency undertakings executed by federal agencies at: https://ncshpo.org/2025/03/27/federal-undertakings-pursuant-to-eo-14156/. Minnesota SHPO also records all Section 106 review requests. For reasons that are unclear to us, there are some discrepancies between the ACHPs list and SHPOs records. For example, the ACHP has published 75 energy emergency reviews in Minnesota, and we have commented on 70. Given the discrepancy, we are concerned that federal agencies may not be providing SHPOs, THPOs, or the ACHP with all the undertakings using the emergency procedures.

18. The federal agencies that have submitted notifications to the Minnesota SHPO under the Energy Emergency Order include: (1) US Army Corps of Engineers (USACE), Regulatory and Civil Works; and (2) USDA Rural Development, Rural Utilities Servies (RUS)

and Rural Business Cooperative Services (RBCS). In these submittals, the agency has allowed for SHPO to comment within 7 days.

19. For most of these reviews, SHPO does not know how or whether the federal agency considered SHPOs recommendations because the emergency procedures do not require agencies to report back. In a couple cases, the federal agency notified us that it intended to proceed with permitting the project despite our request for more information. In one case, having higher risk for effects to historic properties, the submittal was so incomplete that we could not provide meaningful comments on whether the project would affect historic properties. The lead federal agency, USACE Regulatory, declined to provide a complete submittal, and we believe they moved forward with permitting the project.

20. Very recently (May 4), SHPO received a notice under the emergency procedures from the USACE concerning a transmission line project. In the notice, USACE takes the position that the project will result in no historic properties affected, despite the project passing in close proximity to a Native American burial ground. In response, SHPO sent a letter to USACE stating our concerns with this conclusion. A copy of the letter is attached to my declaration as Exhibit B. SHPO would normally have 30 days to review and provide comments on this project with additional time to resolve these concerns with the federal agency. Under the emergency procedures, SHPO has only 7 days to comment on this important issue and is not provided an opportunity to resolve adverse effects to historic properties. It is unclear whether USACE will respond at all to SHPOs concerns.

21. I am concerned that federal agencies are implementing the emergency provisions in a manner inconsistent with the intent of the Act. As a result, historic properties in Minnesota

are at risk of being adversely affected without meaningful consideration of the views of SHPO, Tribes, local governments, other consulting parties, or the public.

I declare under penalty of perjury that the foregoing is true and correct.

Ramsey County, Minnesota
Executed on May 6, 2026

Amy Spong