The Honorable Jamal N. Whitehead

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

STATE OF WASHINGTON, et al.,

        Plaintiffs,

    v.

DONALD TRUMP, et al.,

        Defendants.

Case No. 2:25-cv-00869

**BRIEF OF ENERGY LAW SCHOLARS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

Vanessa R. Waldref, WSBA # 44396
SINGLETON SCHREIBER, LLP
450 Alaskan Way South, Suite 200
Seattle, WA 98104
(509) 509-3822
VWaldref@singletonschreiber.com

Alexandra L. St. Romain (*pro hac vice pending*)
Benjamin Diamond (*pro hac vice pending*)
Center for Applied Environmental Law and Policy
712 H Street NE, Suite 90006
Washington, DC 20002
(973) 477-3766
alex.st.romain@caelp.org

*Counsel for Energy Law Scholars* Amici Curiae

BRIEF OF ENERGY LAW SCHOLARS
*AMICI CURIAE* ISO PLAINTIFFS'
RESPONSE TO MTD
Case No. 2:25-cv-00869

SINGLETON SCHREIBER, LLP
450 Alaskan Way South, Suite 200
Seattle, WA 98104
(509) 509-3822

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................. ii

TABLE OF AUTHORITIES ........................................................................................... iii

INTEREST OF *AMICI CURIAE* ....................................................................................1

INTRODUCTION ...........................................................................................................2

ARGUMENT....................................................................................................................3

I.      The Administration's Actions are Inconsistent with an Energy Emergency, Revealing the Declaration as Nothing More Than a Means to Pursue the President's Policy Agenda......3

      A.      In Conflict with the Claimed Energy-Supply Emergency, the Administration's Actions Are Reducing Supply. ....................................3

      B.      The Administration's Actions Are Increasing Energy Bills. ...................5

      C.      The Administration Is Dictating the Nation's Energy Mix, Not Solving an Energy Emergency. .............................................................. 7

II.     President Trump Has Repeatedly Declared Emergencies to Achieve Political Goals. .......9

III.    Pretextual Emergency Declarations Cannot Authorize Agencies to Sidestep Statutory Requirements. ...........................................................................................................11

CONCLUSION..............................................................................................................14

BRIEF OF ENERGY LAW SCHOLARS                    ii
*AMICI CURIAE* ISO PLAINTIFFS'
RESPONSE TO MTD
Case No. 2:25-cv-00869

SINGLETON SCHREIBER, LLP
450 Alaskan Way South, Suite 200
Seattle, WA 98104
(509) 509-3822

## TABLE OF AUTHORITIES

**Cases**

*Arizona v. Mayorkas*,
143 S. Ct. 1312 (2023)............................................................................................... 14

*Baker v. Carr*,
369 U.S. 186 (1962)................................................................................................... 14

*Ctr. for Biological Diversity v. Trump*,
453 F. Supp. 3d 11 (D.D.C. 2020)............................................................................. 14

*Biden v. Nebraska*,
600 U.S. 477 (2023)................................................................................................... 12

*Dep't of Com. v. New York*,
588 U.S. 752 (2019)............................................................................................ 12, 13

*Doe v. Noem*,
No. 25-cv-15483, 2026 LX 148630 (N.D. Ill. Mar. 10, 2026). ................................. 13

*Fed. Educ. Ass'n v. Trump*,
795 F. Supp. 3d 74 (D.D.C. 2025)............................................................................. 11

*Hughes v. Talen Energy Mktg., LLC*,
578 U.S. 150 (2016)..................................................................................................... 7

*Learning Res., Inc. v. Trump*,
146 S. Ct. 628 (2026)....................................................................................... 9, 12, 14

*Nat'l TPS All. v. Noem*,
166 F.4th 739 (9th Cir. 2026). .............................................................................. 7, 13

*Nebraska v. Su*,
121 F.4th 1 (9th Cir. 2024). ...................................................................................... 12

*Oregon v. Trump*,
165 F.4th 1158 (9th Cir. 2025). ................................................................................ 13

*Oregon v. Trump*,
802 F. Supp. 3d 1277 (D. Or. 2025). ........................................................................ 11

*RENEW Ne. v. DOI*,
No. 25-cv-13961, 2026 LX 106603 (D. Mass. Apr. 21, 2026)................................... 12

*Sterling v. Constantin*,
  287 U.S. 378 (1932)................................................................................. 14

*Youngstown Sheet & Tube Co. v. Sawyer*,
  343 U.S. 579 (1952)............................................................................. 9, 14

**Statutes**

Pub. L. 119-21, §§ 70512(a), 70513(a), 70514(b)(3)(D), 139 Stat. 72 (2025)............................... 5

**Executive Branch Materials**

33 C.F.R. § 325.2(e)(4) .......................................................................................... 12

90 Fed. Reg. 8363 (Jan. 20, 2025) .......................................................................... 4

DOE, *DOE's Use of Federal Power Act Emergency Authority*, https://tinyurl.com/3pbbhank..... 6

EPA, About ENERGY STAR (Apr. 2023), https://perma.cc/58HZ-L2CA ........................ 7

Exec. Order No. 14154, 90 Fed. Reg. 8353 (Jan. 20, 2025)............................................. 5

Exec. Order No. 14156, 90 Fed. Reg. 8433 (Jan. 20, 2025)..................................... 2, 3, 7

Exec. Order No. 14257, 90 Fed. Reg. 15041 (Apr. 2, 2025) ........................................ 10

Letter from Matthew Giacona, Acting Dir., Bureau of Ocean Energy Mgmt., to Rob Keiser,
  Head of Asset Mgmt., Orsted N. Am. Inc. (Aug. 22, 2025), http://perma.cc/FRT9-7YAL ...... 4

Macquarie Energy LLC, DOE Order No. EA-479-A (July 11, 2025)........................................ 5

Press Release, DOE, Energy Department Slashes 47 Burdensome and Costly Regulations,
  Delivering First Milestone in America's Biggest Deregulatory Effort (May 12, 2025),
  https://perma.cc/2YDR-EMNC ............................................................................ 7

Press Release, DOE, Energy Department Announces Termination of 223 Projects, Saving Over
  $7.5 Billion (Oct. 1, 2025), https://perma.cc/6PFL-9YXN ....................................... 5

Press Release, DOI, Interior Announces Two Historic Agreements to Promote Affordable,
  Reliable Energy Production in the United States (Apr. 27, 2026), https://perma.cc/856E-
  H2WZ ............................................................................................................ 8

Press Release, DOI, The Trump Administration Protects U.S. National Security by Pausing
  Offshore Wind Leases (Dec. 22, 2025), https://perma.cc/45W2-JRPC .................................. 4

Remarks During Meeting with Executives of Oil and Gas Companies, 2026 Daily Comp. Pres.
  Doc. 12 (Jan. 9, 2026) ...................................................................................... 8

**Other Authorities**

Alexandra B. Klass & Dave Owen, *The President and the Power Grid*, Mich. L. Rev. Online (forthcoming 2026), https://tinyurl.com/5n8h6zdp ................................................................ 6

Amy L. Stein, *Domestic Emergency Pretexts*, 98 Ind. L. J. 479 (2023)...................................... 12

Andrea Katz, *Trump's National Guard Deployments Reignite 200-Year-Old Legal Debate*, The Conversation (Oct. 21, 2025), https://perma.cc/CNU6-KJ94 ................................................... 11

Ben Diamond, *One Emergency After Another*, Lawfare (Apr. 14, 2026), https://tinyurl.com/y68muxmj ................................................................................................ 9

Brief of Petitioner States, *Michigan v. DOE*, No. 25-1159 (D.C. Cir. Apr. 10, 2026), Doc. 2168136 ............................................................................................................................ 6

Brian Martucci, *Industrial Loads Boost Consumers Energy's Sales as Coal Plant Emergency Order Costs Rise*, Utility Dive (Apr. 28, 2026), https://perma.cc/U7H9-RWBL ..................... 6

Complaint, *Va. Elec. & Power Co. v. DOI*, No. 25-cv-830 (E.D. Va. Dec. 23, 2025), Dkt. 1....... 7

Donald J. Trump (@realDonaldTrump), Truth Social (Aug. 20, 2025, at 09:51 ET), https://tinyurl.com/bp7kysy5 ................................................................................................ 8

Donald J. Trump (@realDonaldTrump), Truth Social (Mar. 17, 2025, at 18:46 ET), https://tinyurl.com/3y72tcf2 ................................................................................................. 8

Donald J. Trump (@realDonaldTrump), Truth Social (Jan. 15, 2025, at 11:03 ET), https://tinyurl.com/yckhfa87 ................................................................................................ 2

*Emergency Powers Data and Methodology*, Ctr. for Applied Env't L. and Pol'y, https://www.caelp.org/emergency-power-executive-order-data-and-methodology .................. 9

Ilya Somin, *Trump's 'Emergencies' Are Pretexts for Undermining the Constitution*, CATO Institute (May 15, 2025), https://tinyurl.com/2b7tsrbu ................................................................. 2

Jin Zhao et al., *Impacts of Renewable Energy Resources on the Weather Vulnerability of Power Systems*, 9 Nat. Energy 1407 (2024) .......................................................................................... 4

Joe Barrett & Jennifer Hiller, *$615,000 a Day: Order to Keep Coal Plant Open Ignites Debate in Michigan*, Wall St. J. (Nov. 3, 2025), https://tinyurl.com/36fsrd7r ........................................... 6

Just Security, *The "Presumption of Regularity" in Trump Administration Litigation* (4th ed.), https://perma.cc/M2RF-P5SM ............................................................................................... 11

Letter from Michael Roeder, Pres., CenterPoint Energy, to The Hon. Chris Wright, Sec'y of Energy (Feb. 17, 2026), https://perma.cc/R7SG-J233 ................................................................. 6

Martha Muir, *Trump Administration Cites National Security to Widen Clampdown on Wind Farms*, The Financial Times (May 3, 2026), https://tinyurl.com/4skmym72 ........................... 5

Michael Goggin, *The Cost of Federal Mandates to Retain Fossil-Burning Power Plants* 9, Grid Strategies LLC (Aug. 2025), https://perma.cc/QYX5-D5K2 ...................................... 6

N. Am. Elec. Reliability Corp., *2025 State of Reliability* (June 2025), https://perma.cc/UB45-2D9U ................................................................................................... 4

Press Release, Lazard, Lazard Releases 2025 Levelized Cost of Energy+ Report (June 16, 2025), https://perma.cc/J45B-YN2Z ............................................................................ 4

Press Release, TotalEnergies, United States: TotalEnergies Awarded a 20-Year Contract to Supply 1.3 GW+ of Renewable Electricity to New Jersey (Jan. 25, 2024), https://perma.cc/4E37-S76A ......................................................................................... 8

Rhodium Group, MIT-CEEPR Clean Investment Monitor, *US Clean Technology Manufacturing in Q1 2026* (Apr. 23, 2026), https://perma.cc/YX2G-2PWD. ...................................... 5

Scott Streater, *BLM Cancels Largest Solar Project in North America*, E&E News (Oct. 10. 2025), https://perma.cc/EVF2-3BKL ..................................................................... 4

Serena Mayeri, et al., Opinion, *Trump's Fake Emergencies are the Real Crisis*, Wash. Post (Apr. 28, 2025), https://perma.cc/8C6D-5LBH ...................................................... 2

Settlement Agreement Between the United States and Attentive Energy, LLC (Mar. 23, 2026), https://perma.cc/3UBY-5N2T ................................................................................... 8

Spencer Kimball, *Offshore Wind Has No Future in the U.S. Under Trump Administration, Interior Secretary Says*, CNBC (Sep. 11, 2025), https://perma.cc/978J-5XWU ....................... 8

Tarak Alexander Hassan, *"The Trade Deficit Isn't an Emergency—It's a Sign of America's Strength," Writes BU Economist*, Boston University: The Brink (Apr. 8, 2025), https://perma.cc/PK8V-E7YV .................................................................................. 10

Transcript of Preliminary Injunction Hearing, *Revolution Wind, LLC v. Burgum*, No. 25-cv-02999 (D.D.C. Jan. 12, 2026) ................................................................................ 13

Will Reisinger & Matt Gooch, *Virginia Energy Regulatory Updates (November 2023)*, ReisingerGooch (Dec. 6, 2023), https://perma.cc/S6RN-M8AM ........................................ 7

BRIEF OF ENERGY LAW SCHOLARS
*AMICI CURIAE* ISO PLAINTIFFS'
RESPONSE TO MTD
Case No. 2:25-cv-00869

vi

SINGLETON SCHREIBER, LLP
450 Alaskan Way South, Suite 200
Seattle, WA 98104
(509) 509-3822

# INTEREST OF *AMICI CURIAE*[1]

Energy Law Scholars *amici curiae* teach and write in the fields of energy law and policy. *Amici* are Daniel Farber, Sho Sato Professor of Law, University of California, Berkely School of Law; Sharon B. Jacobs, Professor of Law, University of California, Berkeley School of Law; Joshua C. Macey, Associate Professor of Law, Yale Law School; Felix Mormann, Professor of Law, Texas A&M University School of Law; Adam Orford, Associate Professor of Law, Fordham University School of Law; Ari Peskoe, Director, Electricity Law Initiative, Harvard Law School; and Hannah Wiseman, Professor of Law, Penn State Dickinson Law.

Energy Law Scholars *Amici* have a strong interest in upholding the frameworks governing energy law, in which primary authority is allocated to Congress and the States, not the President. They submit this brief because of the important questions raised by the Trump Administration's invocation of emergency powers to dictate the Nation's energy mix in ways that are inconsistent with the declared emergency and governing law. As leading energy law scholars, *Amici* are well-positioned to provide insights that may assist the Court in evaluating the factual and legal context of the President's energy emergency declaration.

---

[1] No party or party's counsel authored this brief, no party or party's counsel contributed any money intended to fund the preparation or submission of this brief, and no person other than *amici* or their counsel contributed money intended to fund this brief. *See* L.C.R. 7(*o*)(4); Fed. R. App. P. 29(a)(4)(E).

BRIEF OF ENERGY LAW SCHOLARS
*AMICI CURIAE* ISO PLAINTIFFS'
RESPONSE TO MTD
Case No. 2:25-cv-00869

1

SINGLETON SCHREIBER, LLP
450 Alaskan Way South, Suite 200
Seattle, WA 98104
(509) 509-3822

## INTRODUCTION

President Trump is using emergency authority at an unprecedented scale and scope—not because the Nation faces more crises, but because emergency powers are his preferred tool for arrogating power belonging to the States and Congress. Commentators across the political spectrum have noted this trend and warned of the "dangerous pattern of invoking spurious emergencies to undermine the Constitution, threatening liberty and circumventing Congress." Ilya Somin, *Trump's 'Emergencies' Are Pretexts for Undermining the Constitution*, CATO Institute (May 15, 2025), https://tinyurl.com/2b7tsrbu.[2]

On his first day in office, President Trump declared an energy emergency. Exec. Order No. 14156, 90 Fed. Reg. 8433 (Jan. 20, 2025) ("Declaration"). The Declaration deplored the "Nation's inadequate energy supply and infrastructure," which "cause[] and make[] worse the high energy prices that devastate Americans." *Id.* Yet his Administration concurrently launched an assault on energy supply and affordability, taking actions to choke private developers' ability to build the lowest-cost and most easily deployable energy generation, while requiring inefficient and uneconomical plants to keep running at exorbitant cost.

This inconsistency between word and deed is not accidental. Invoking this Declaration, the Administration has sought to seize power from the States and Congress to unilaterally dictate the Nation's energy mix. The Declaration itself contains a tell, defining "energy" or "energy resource" to include crude oil, natural gas, and coal *but not* solar and wind. 90 Fed. Reg. at 8436. And, just five days before declaring that insufficient energy production and generation constituted an extraordinary threat, President Trump said even operative wind resources "should be ripped down ASAP." Donald J. Trump (@realDonaldTrump), Truth Social (Jan. 15, 2025, at 11:03 ET), https://tinyurl.com/yckhfa87.

---

[2] *See also, e.g.*, Serena Mayeri, et al., Opinion, *Trump's Fake Emergencies are the Real Crisis*, Wash. Post (Apr. 28, 2025), https://perma.cc/8C6D-5LBH (concluding that, despite "divergent views on many legal and political questions," "we all agree that the unchecked executive power the president claims poses an existential threat to liberty and constitutional democracy").

BRIEF OF ENERGY LAW SCHOLARS                    2         SINGLETON SCHREIBER, LLP
*AMICI CURIAE* ISO PLAINTIFFS'                             450 Alaskan Way South, Suite 200
RESPONSE TO MTD                                           Seattle, WA 98104
Case No. 2:25-cv-00869                                    (509) 509-3822

The Nation needs abundant, reliable, and affordable energy. But the "emergency" declared by President Trump is not directed to achieve that goal. Defendants and *amici* States cloak the challenged actions as part of a national response to a genuine emergency and ask this Court to defer to the President's judgment. That portrayal is contrived. This Administration's actions demonstrate that its goal is not to alleviate an energy emergency by increasing supply or lowering costs, but rather to favor fossil fuels over renewable energy and, in doing so, usurp States' traditional role in determining the energy mix and avoid statutory requirements. To be clear, inquiry into presidential motives may not be appropriate for every presidential action. But here, abundant evidence demonstrates the pretextual nature of the Declaration.

Accordingly, the Declaration cannot relieve agencies of their statutory duty to provide a reasoned basis for their actions. This Court has the authority, and responsibility, to review the challenged agency actions under the Administrative Procedure Act. Doing so is critical to protecting federalism and separation of powers.

## ARGUMENT

**I.    The Administration's Actions are Inconsistent with an Energy Emergency, Revealing the Declaration as Nothing More Than a Means to Pursue the President's Policy Agenda.**

The Declaration claims an emergency due to the "Nation's inadequate energy supply" and "high energy prices that devastate Americans." 90 Fed. Reg. at 8433. An administration legitimately concerned about energy supply and affordability would take all available steps to increase supply and reduce costs. This Administration has done the opposite, reducing supply and raising consumers' costs. Rather than addressing the alleged emergency, the President is using emergency authority to usurp traditional State authority to dictate energy mix by propping up resources that align with his agenda while impeding those that do not.

**A.    In Conflict with the Claimed Energy-Supply Emergency, the Administration's Actions Are Reducing Supply.**

If an energy-supply emergency existed, the Administration would work to increase energy supply as quickly and cheaply as possible. Instead, since day one, this Administration has

BRIEF OF ENERGY LAW SCHOLARS
*AMICI CURIAE* ISO PLAINTIFFS'
RESPONSE TO MTD
Case No. 2:25-cv-00869

3

SINGLETON SCHREIBER, LLP
450 Alaskan Way South, Suite 200
Seattle, WA 98104
(509) 509-3822

*reduced* energy supply, specifically undermining the development of solar and wind, the cheapest- and fastest-deploying energy sources. *See* Press Release, Lazard, Lazard Releases 2025 Levelized Cost of Energy+ Report (June 16, 2025), https://perma.cc/J45B-YN2Z ("[U]tility-scale solar and onshore wind remain the most cost-effective forms of new-build energy generation on an unsubsidized basis.").[3]

For example, instead of working to finalize nearly complete energy projects to promptly bring more energy onto the grid, this Administration has tried to make it impossible to complete those projects by halting construction and cancelling ongoing review processes. The Department of the Interior ("DOI") ordered five utility-scale offshore wind projects to cease construction. *See* Press Release, DOI, The Trump Administration Protects U.S. National Security by Pausing Offshore Wind Leases (Dec. 22, 2025), https://perma.cc/45W2-JRPC. An earlier order halted a project that was 80 percent complete. Letter from Matthew Giacona, Acting Dir., Bureau of Ocean Energy Mgmt., to Rob Keiser, Head of Asset Mgmt., Orsted N. Am. Inc. (Aug. 22, 2025), http://perma.cc/FRT9-7YAL. The Administration even canceled the environmental-review process for the largest solar project in North America, set to power nearly two million homes. Scott Streater, *BLM Cancels Largest Solar Project in North America*, E&E News (Oct. 10, 2025), https://perma.cc/EVF2-3BKL.

Likewise, instead of instituting measures to streamline permitting for the cheapest, quickest-to-deploy resources, this Administration stopped issuing permits for renewable projects altogether. The President withdrew the outer continental shelf from eligibility for future wind-energy leasing and froze federal permitting for offshore wind projects indefinitely. 90 Fed. Reg. 8363 (Jan. 20, 2025). More recently, the Department of Defense stopped processing routine

---

[3] Systems with renewable energy are also highly reliable. A recent study of thousands of blackouts found that grids with higher renewable penetration were *less* vulnerable to outages, not more. Jin Zhao et al., *Impacts of Renewable Energy Resources on the Weather Vulnerability of Power Systems*, 9 Nat. Energy 1407, 1407–1414 (2024). And battery storage can help integrate intermittent renewable generation. N. Am. Elec. Reliability Corp., *2025 State of Reliability* 1 (June 2025), https://perma.cc/UB45-2D9U.

| BRIEF OF ENERGY LAW SCHOLARS | 4 | SINGLETON SCHREIBER, LLP |
|---|---|---|
| *AMICI CURIAE* ISO PLAINTIFFS' RESPONSE TO MTD Case No. 2:25-cv-00869 | | 450 Alaskan Way South, Suite 200 Seattle, WA 98104 (509) 509-3822 |

approvals for 165 onshore wind projects on private land, which could have collectively powered 15 million homes. Martha Muir, *Trump Administration Cites National Security to Widen Clampdown on Wind Farms*, Fin. Times (May 3, 2026), https://tinyurl.com/4skmym72.

And instead of incentivizing the development of energy projects—or at least continuing to fund existing projects—President Trump halted grant programs supporting energy development. *See* Exec. Order No. 14154, 90 Fed. Reg. 8353, 8357 (Jan. 20, 2025). The Department of Energy ("DOE") then terminated $7.56 billion for energy, energy-efficiency, and energy-supply-chain projects. *See* Press Release, DOE, Energy Department Announces Termination of 223 Projects, Saving Over $7.5 Billion (Oct. 1, 2025), https://perma.cc/6PFL-9YXN. The One Big Beautiful Bill Act, championed and signed into law by President Trump, eliminated tax credits for solar and wind energy development. *See* Pub. L. 119-21, §§ 70512(a), 70513(a), 70514(b)(3)(D), 139 Stat. 72 (2025). As a result, companies nationwide have canceled over $24 billion of clean-energy manufacturing investments since January 2025. Rhodium Group, MIT-CEEPR Clean Investment Monitor, *US Clean Technology Manufacturing in Q1 2026* (Apr. 23, 2026), https://perma.cc/YX2G-2PWD.

Finally, instead of slowing energy exports to alleviate supply concerns, the Administration proceeded apace to approve the export of domestic energy resources, concluding, contrary to the Declaration, that "wholesale energy markets are sufficiently robust to make supplies available to exporters and other market participants." Macquarie Energy LLC, DOE Order No. EA-479-A (July 11, 2025).

*Amici* States argue that increasing demand signals an energy emergency. *See generally* States' *Amicus* Br., Dkt. 74. But all of these actions worsen any demand concerns and are inconsistent with genuine efforts to address energy supply problems.

**B.      The Administration's Actions Are Increasing Energy Bills.**

If high energy prices created an emergency, the Administration should take actions that alleviate them. But as basic economics suggests, impeding development of the cheapest, fastest-

to-deploy energy resources increases energy prices. And this Administration has taken actions that make energy even more expensive.

Most notably, the Administration is mandating continued operation of aging, uneconomic energy sources. DOE has required power plants slated for retirement—even those that have already been replaced with newer, cheaper resources—to keep operating. *See, e.g.*, Brief of Petitioner States at 8–9, *Michigan v. DOE*, No. 25-1159 (D.C. Cir. Apr. 10, 2026), Doc. 2168136 (challenging order to keep Michigan-based coal-fired plant online despite replacement sources increasing available generation at a lower cost). DOE has issued an unprecedented 45 such orders, using authority usually reserved for sudden emergencies to override state planning processes and influence the makeup of the grid. *See* DOE, *DOE's Use of Federal Power Act Emergency Authority*, https://tinyurl.com/3pbbhank; Alexandra B. Klass & Dave Owen, *The President and the Power Grid*, Mich. L. Rev. Online 16–17 (forthcoming 2026), https://tinyurl.com/5n8h6zdp.

Keeping these uneconomic plants running is expensive—and ratepayers are picking up the tab. For example, keeping just one coal-fired plant open costs more than $600,000 per day, or $180 million since late May 2025, which the plant intends to recover from consumers. Joe Barrett & Jennifer Hiller, *$615,000 a Day: Order to Keep Coal Plant Open Ignites Debate in Michigan*, Wall St. J. (Nov. 3, 2025), https://tinyurl.com/36fsrd7r; Brian Martucci, *Industrial Loads Boost Consumers Energy's Sales as Coal Plant Emergency Order Costs Rise*, Utility Dive (Apr. 28, 2026), https://perma.cc/U7H9-RWBL. And other operators impacted by similar DOE orders contend that keeping plants open would be "neither practical nor financially responsible." Letter from Michael Roeder, Pres., CenterPoint Energy, to The Hon. Chris Wright, Sec'y of Energy (Feb. 17, 2026), https://perma.cc/R7SG-J233 (predicting costs to keep Indiana plant on the grid to be $14–18 million). These DOE orders could increase ratepayer costs as much as $3–5 billion annually. *See* Michael Goggin, *The Cost of Federal Mandates to Retain Fossil-Burning Power Plants* 9, Grid Strategies LLC (Aug. 2025), https://perma.cc/QYX5-D5K2.

BRIEF OF ENERGY LAW SCHOLARS
*AMICI CURIAE* ISO PLAINTIFFS'
RESPONSE TO MTD
Case No. 2:25-cv-00869

6

SINGLETON SCHREIBER, LLP
450 Alaskan Way South, Suite 200
Seattle, WA 98104
(509) 509-3822

The Administration's cost-increasing actions do not end there. DOE has proposed repealing 47 energy efficiency standards; just one of these programs (EnergyStar) saves the average household $450 annually. Press Release, DOE, Energy Department Slashes 47 Burdensome and Costly Regulations, Delivering First Milestone in America's Biggest Deregulatory Effort (May 12, 2025), https://perma.cc/2YDR-EMNC; EPA, *About ENERGY STAR* (Apr. 2023), https://perma.cc/58HZ-L2CA. And in its zeal to stop wind energy development, this Administration ordered a nearly complete Virginia wind farm to cease construction, even though ratepayers had already paid $757 million toward its construction, a downpayment on $3 billion in customer fuel savings as the new supply came online. Will Reisinger & Matt Gooch, *Virginia Energy Regulatory Updates (November 2023)*, ReisingerGooch (Dec. 6, 2023), https://perma.cc/S6RN-M8AM; Complaint at 12, *Va. Elec. & Power Co. v. DOI*, No. 25-cv-830 (E.D. Va. Dec. 23, 2025), Dkt. 1. Despite the purported affordability emergency, the Administration forced these sunk costs onto ratepayers and denied them the promised future savings.

### C.    The Administration Is Dictating the Nation's Energy Mix, Not Solving an Energy Emergency.

States, not the federal government, determine the energy mix within their borders—including whether and when to build new resources or retire aging ones—and have exclusive authority over siting most new infrastructure. *See Hughes v. Talen Energy Mktg., LLC*, 578 U.S. 150, 154, 165 (2016). The Declaration is an attempt to override "State and local policies" promoting renewable energy that the Administration disfavors. 90 Fed. Reg. at 8433. Indeed, President Trump's antipathy to those policies and the renewable resources they support is crystal clear.

"When decision-makers repeatedly broadcast their impermissible reasons for making a decision, we should . . . believe them the first time." *Nat'l TPS All. v. Noem*, 166 F.4th 739, 769 (9th Cir. 2026) (Mendoza, J., joined by Wardlaw, J., concurring) (internal quotation marks omitted). President Trump has proclaimed: "My goal is to not let any windmill be built."

BRIEF OF ENERGY LAW SCHOLARS                  7        SINGLETON SCHREIBER, LLP
*AMICI CURIAE* ISO PLAINTIFFS'                          450 Alaskan Way South, Suite 200
RESPONSE TO MTD                                        Seattle, WA 98104
Case No. 2:25-cv-00869                                 (509) 509-3822

Remarks During Meeting with Executives of Oil and Gas Companies, 2026 Daily Comp. Pres. Doc. 12 (Jan. 9, 2026); *see also* Donald J. Trump (@realDonaldTrump), Truth Social (Aug. 20, 2025, at 09:51 ET), https://tinyurl.com/bp7kysy5 (describing wind and solar energy as "THE SCAM OF THE CENTURY!" and vowing not to approve any such projects). Secretary Burgum proclaimed that, "under this administration, there is not a future for offshore wind projects." Spencer Kimball, *Offshore Wind Has No Future in the U.S. Under Trump Administration, Interior Secretary Says*, CNBC (Sep. 11, 2025), https://perma.cc/978J-5XWU. Conversely, the President has expressed adoration for coal, oil, and natural gas. *See, e.g.*, Donald J. Trump (@realDonaldTrump), Truth Social (Mar. 17, 2025, at 18:46 ET), https://tinyurl.com/3y72tcf2 ("I am authorizing my Administration to immediately begin producing Energy with BEAUTIFUL, CLEAN COAL.")

These statements offer the only plausible explanation for the Administration's unprecedented efforts to undo wind projects. Recently, the Administration interfered with resource developments supported by States, including a long-term procurement contract in New Jersey, by offering nearly $1 billion in public funds to induce TotalEnergies to abandon wind leases and redirect investment into ongoing fossil-fuel projects. *See* Settlement Agreement Between the United States and Attentive Energy, LLC (Mar. 23, 2026), https://perma.cc/3UBY-5N2T; Press Release, TotalEnergies, United States: TotalEnergies Awarded a 20-Year Contract to Supply 1.3 GW+ of Renewable Electricity to New Jersey (Jan. 25, 2024), https://perma.cc/4E37-S76A. Thereafter, the Administration entered into similar settlements with additional wind developers. Press Release, DOI, Interior Announces Two Historic Agreements to Promote Affordable, Reliable Energy Production in the United States (Apr. 27, 2026), https://perma.cc/856E-H2WZ. While the Administration's actions are inconsistent with the declared "energy emergency," they are fully consistent with the true purpose of the Declaration: to seize power from the States to give preferential treatment to the Administration's favored energy sources.

BRIEF OF ENERGY LAW SCHOLARS
*AMICI CURIAE* ISO PLAINTIFFS'
RESPONSE TO MTD
Case No. 2:25-cv-00869

8

SINGLETON SCHREIBER, LLP
450 Alaskan Way South, Suite 200
Seattle, WA 98104
(509) 509-3822

## II.    President Trump Has Repeatedly Declared Emergencies to Achieve Political Goals.

This abuse of emergency powers to effectuate the President's agenda is part of a broader strategy. In the absence of objectively observable crises, President Trump has invoked emergency powers in a manner and to a degree unmatched by any recent president. Context reinforces the need for this Court to prevent the Administration from using this Declaration as "'a ready pretext for [the] usurpation' of congressional power" and State authority. *Learning Res., Inc. v. Trump*, 146 S. Ct. 628, 641 (2026) (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 650 (1952) (Jackson, J., concurring)).

In one year, President Trump issued more executive orders and presidential proclamations invoking emergency powers ("emergency orders") than any of his predecessors issued across their entire four or eight years in office. *See Emergency Powers Data and Methodology*, Ctr. for Applied Env't L. and Pol'y, https://www.caelp.org/emergency-power-executive-order-data-and-methodology (Summary Tables tab, Emergency Orders column); *see also* Ben Diamond, *One Emergency After Another*, Lawfare (Apr. 14, 2026), https://tinyurl.com/y68muxmj (discussing related data).

BRIEF OF ENERGY LAW SCHOLARS
*AMICI CURIAE* ISO PLAINTIFFS'
RESPONSE TO MTD
Case No. 2:25-cv-00869

9

SINGLETON SCHREIBER, LLP
450 Alaskan Way South, Suite 200
Seattle, WA 98104
(509) 509-3822



Emergency Orders Issued – Annual Average

Data as of 5/5/26

President Trump has issued these emergency orders despite the lack of any situation that approximates the magnitude of the crises arising in previous terms, such as the 9/11 attack, Hurricane Katrina, and the COVID-19 pandemic.[4] The pattern strongly suggests that the President is frequently using emergency powers not to respond to true crises, but instead to accomplish policy goals.

For example, President Trump declared an emergency due to a "large and persistent annual trade deficit" to justify unprecedented global tariffs. Exec. Order No. 14257, 90 Fed. Reg. 15041 (Apr. 2, 2025). But trade deficits are not emergencies. Tarak Alexander Hassan, *"The*

---

[4] Though the Iranian war has had a significant effect on global energy markets, it began almost 1.5 years *after* the President issued the Declaration, and the resulting rise in oil prices makes the Administration's efforts to hinder domestic renewable-energy development even more confounding.

*Trade Deficit Isn't an Emergency—It's a Sign of America's Strength," Writes BU Economist*, Boston University: The Brink (Apr. 8, 2025), https://perma.cc/PK8V-E7YV. And in response to predominantly peaceful protests, the President federalized and deployed the National Guard in three states. Andrea Katz, *Trump's National Guard Deployments Reignite 200-Year-Old Legal Debate*, The Conversation (Oct. 21, 2025), https://perma.cc/CNU6-KJ94. But courts concluded that "[t]he President's determination was simply untethered to the facts," and was "not conceived in good faith." *Oregon v. Trump*, 802 F. Supp. 3d 1277, 1292 (D. Or. 2025) (internal quotation marks and emphasis omitted).

Other courts have also questioned the good faith of this Administration. *See*, *e.g., Fed. Educ. Ass'n v. Trump*, 795 F. Supp. 3d 74, 90–92 (D.D.C. 2025) (noting numerous examples and concluding that this Administration "may have forfeited the right to such a presumption of regularity"); *see also* Just Security, *The "Presumption of Regularity" in Trump Administration Litigation* (4th ed.), https://perma.cc/M2RF-P5SM (cataloguing 90 instances of courts' expressing distrust of government information and representations).

The Declaration is thus not an outlier. This Administration's unprecedented use of emergency powers partnered with its words and actions worsening the alleged energy emergency should lead this Court to approach Defendants' arguments skeptically.

## III.    Pretextual Emergency Declarations Cannot Authorize Agencies to Sidestep Statutory Requirements.

This Court should not credit Defendants' and *amici* States' attempt to cloak the Administration's actions as part of a response to a genuine emergency nor their insistence that this Court defer to the President's judgment. *See* Defs.' Mot. to Dismiss 22 & n.7, Dkt. 64; States' *Amicus* Br. 10–14. As explained *supra* Part I, the Administration's desire to dictate the Nation's energy mix animates the Declaration, not any intention of solving a purported emergency. Far from meriting deference, the circumstances surrounding this case counsel careful review of the rationale for the challenged agency actions to determine whether they are arbitrary

BRIEF OF ENERGY LAW SCHOLARS
*AMICI CURIAE* ISO PLAINTIFFS'
RESPONSE TO MTD
Case No. 2:25-cv-00869

11

SINGLETON SCHREIBER, LLP
450 Alaskan Way South, Suite 200
Seattle, WA 98104
(509) 509-3822

and capricious. Judicial review is critical to preventing the Executive Branch from manufacturing emergencies and to preserving the rule of law.

The agencies rely solely on the Declaration to justify the challenged actions but fail to explain how the Declaration is sufficient to trigger their emergency procedures, each of which has specific prerequisites. *Compare, e.g.*, 33 C.F.R. § 325.2(e)(4) (confining Army Corps of Engineers' emergency permitting procedures to situations presenting "an unacceptable hazard to life, a significant loss of property, or an immediate, unforeseen, and significant economic hardship"), *with* Am. Compl. Ex. I, at 1, Dkt. 55 (authorizing emergency procedures for "activities covered by the National Energy Emergency" without discussing how those activities conform to regulatory limits). But a "general reference to . . . presidential directives does not shield [agency actions] from arbitrary-and-capricious review." *RENEW Ne. v. DOI*, No. 25-cv-13961, 2026 LX 106603, at *65 (D. Mass. Apr. 21, 2026); *Nebraska v. Su*, 121 F.4th 1, 15 (9th Cir. 2024) ("The Supreme Court has never excepted a final rule from APA review because it carried out a presidential directive."). Likewise, the Supreme Court recently reaffirmed that the President's declaration of an emergency is not a talisman or get-out-of-jail-free card. *See Learning Res.*, 146 S. Ct. at 640 (invalidating tariffs notwithstanding arguments that the "Presidential declaration of emergency . . . is unreviewable"); *see also id.* at 641 (rejecting argument that major-questions doctrine does not apply to emergency statutes); *see also Biden v. Nebraska*, 600 U.S. 477, 500–06 (2023) (invalidating President Biden's emergency student-loan program).

Thus, this Court should undertake arbitrary-and-capricious review of the challenged agency actions. *See* Amy L. Stein, *Domestic Emergency Pretexts*, 98 Ind. L. J. 479, 524 (2023) (discussing examples of courts reviewing agency emergency actions). In doing so, where the "evidence tells a story that does not match the explanation [given]," that agency action lacks an adequate explanation, and a court may conclude it is arbitrary and capricious. *Dep't of Com. v. New York*, 588 U.S. 752, 784–85 (2019). This "reasoned explanation requirement . . . is meant to ensure that agencies offer genuine justifications for important decisions." *Id.* at 785.

BRIEF OF ENERGY LAW SCHOLARS
*AMICI CURIAE* ISO PLAINTIFFS'
RESPONSE TO MTD
Case No. 2:25-cv-00869

12

SINGLETON SCHREIBER, LLP
450 Alaskan Way South, Suite 200
Seattle, WA 98104
(509) 509-3822

Accordingly, courts are obliged "to look beyond an agency's purported rationale when that rationale is pretext or a cloak for improper motive." *Nat'l TPS All.*, 166 F.4th at 771 (Mendoza, J., joined by Wardlaw, J., concurring). Courts have recently done exactly that when reviewing similarly arbitrary actions by this Administration. *See Doe v. Noem*, No. 25-cv-15483, 2026 LX 148630, at *20 (N.D. Ill. Mar. 10, 2026) (concluding that "termination of TPS for Burma was likely arbitrary and capricious because the Secretary did not terminate Burma's designation due to a change in country conditions and instead did so as part of a larger effort to end TPS entirely[]," and relying on "the Secretary's and the President's hostility towards TPS, as manifest in public statements and [an] Executive Order" to support finding of pretext); Transcript of Preliminary Injunction Hearing at 44:4–45:1, *Revolution Wind, LLC v. Burgum*, No. 25-cv-02999 (D.D.C. Jan. 12, 2026) (concluding that the government's "failure to explain or apply [its asserted national security] reasoning [for halting wind project construction] suggests that the stated national security reason may have been pretextual," a concern "heightened by Interior Secretary Burgum's press appearances . . . in which he criticized offshore wind projects for a variety of reasons unrelated to national security").

Here, as in *Department of Commerce*, *Doe v. Noem*, and *Revolution Wind*, the rationale provided in the Declaration—the sole justification for the agencies' actions—is broadly "incongruent with" the Administration's actions and statements. *Dep't of Com.*, 588 U.S. at 785. While findings of pretext are uncommon, by word and deed, the Declaration amounts to nothing more than a pretense to determine the winners and losers in the Nation's energy mix and upend the States' role. *See supra* Part I. Further, this Administration's unprecedented abuse of emergency powers and troubled record of candor to courts warrant such a finding here. *See supra* Part II. At a minimum, this Court should view the Administration's reliance on the Declaration and its unbounded invocations of emergency with extreme skepticism. *See Oregon v. Trump*, 165 F.4th 1158, 1184 (9th Cir. 2025) (Bybee, J., statement in support of en banc review) ("[W]hen it comes to the findings of fact supporting the President's declaration, we need not accept the President's telling of the story as the last word, particularly in the face of contrary evidence.").

To be clear, this Court need not decide whether existing conditions could justify an energy emergency;[5] the Court need only consider whether the agencies' reliance on *this* Declaration was reasonable. It was not.

Longstanding Supreme Court precedent allows courts to act when faced with unusual cases where there is "an obvious instance of a manifestly unauthorized exercise of power," *Baker v. Carr*, 369 U.S. 186, 217 (1962) that lies outside "a permitted range of honest judgment," *Sterling v. Constantin*, 287 U.S. 378, 399 (1932). Otherwise, as the Chief Justice emphasized earlier this year, emergency powers would "tend to kindle emergencies." *Learning Res.*, 146 S. Ct. at 641 (quoting *Youngstown*, 343 U.S. at 650 (Jackson, J., concurring)). Could an agency rely on a Presidential declaration that "there is an energy emergency because I say so," and tell a court it cannot review an action because it is based upon that declaration? That would be absurd. This principle should extend to scenarios where a court directly reviews presidential action, and it is certainly applicable when a court reviews agency action purportedly justified by a pretextual presidential determination. This Administration's actions have driven courts to review and strike down presidential directives in the typically executive domains of emergency powers, military affairs, and national security. This Court can and should do the same.

**CONCLUSION**

"[R]ule by indefinite emergency edict risks leaving all of us with a shell of a democracy and civil liberties just as hollow." *Arizona v. Mayorkas*, 143 S. Ct. 1312, 1316 (2023) (Gorsuch, J., concurring). To safeguard our constitutional order, this Court should deny the Motion to Dismiss and evaluate the merits of Plaintiffs' claims.

---

[5] Deciding whether the agencies have acted unlawfully does not require this Court to decide whether the National Emergencies Act ("NEA") provides a manageable standard for review. The agencies' actions are independent of, and not triggered by, a declaration under the NEA. *Cf. Ctr. for Biological Diversity v. Trump*, 453 F. Supp. 3d 11, 31–34 (D.D.C. 2020) (holding that the question whether the President has properly invoked an NEA emergency is a nonjusticiable political question).

BRIEF OF ENERGY LAW SCHOLARS
*AMICI CURIAE* ISO PLAINTIFFS'
RESPONSE TO MTD
Case No. 2:25-cv-00869

14

SINGLETON SCHREIBER, LLP
450 Alaskan Way South, Suite 200
Seattle, WA 98104
(509) 509-3822

Dated: May 13, 2026

Respectfully submitted,

Vanessa R. Waldref, WSBA # 44396
SINGLETON SCHREIBER, LLP
450 Alaskan Way South, Suite 200
Seattle, WA 98104
(509) 509-3822
VWaldref@singletonschreiber.com

Alexandra L. St. Romain (*pro hac vice*
    pending)
Benjamin Diamond (*pro hac vice pending*)
Center for Applied Environmental Law and
    Policy
712 H Street NE, Suite 90006
Washington, DC 20002
(973) 477-3766
alex.st.romain@caelp.org

*Counsel for Energy Law Scholars* Amici
Curiae

*I certify that this memorandum contains
4,199 words, in compliance with the Local
Civil Rules.*

BRIEF OF ENERGY LAW SCHOLARS        15        SINGLETON SCHREIBER, LLP
*AMICI CURIAE* ISO PLAINTIFFS'                     450 Alaskan Way South, Suite 200
RESPONSE TO MTD                                         Seattle, WA 98104
Case No. 2:25-cv-00869                                   (509) 509-3822